CASE 29—EQUITY—DECEMBER 4, 1880.

# Alexander v. Ellison, &c.

APPEAL FROM CUMBERLAND CIRCUIT COURT.

1. Although a vendor may have a lien upon real estate conveyed by him to his son and daughter by deed of record, yet, if he announce to a third party that he had given them the land, and that she might safely loan them money, and secure her loan by a mortgage upon it, and upon the faith of his statement she makes the loan and takes a mortgage, his lien will be subordinated to hers for the payment of the mortgage debt.

2. A party will not be permitted by the chancellor to lead another to believe by his assurances that land is unencumbered, and induce another to loan money upon its security, and afterwards defeat the recovery of the money by asserting a lien of his own, in existence when he advised the loan.

3. When houses situate upon joint property are falling to decay, and one tenant out of his own means makes reparation, he is not only entitled to contribution, but has a lien on the interests of his co-tenants, especially if they refuse, or, being under disability, are unable to consent to bear their share of the expense.

4. If a debtor has a security to which he can resort for indemnity, if he be compelled to pay the debt, such security inures to the benefit of the creditor.

ALEXANDER, BAKER & READ FOR APPELLANT.

1. The judgment is neither warranted by the pleadings, proof, nor prayer for relief.

2. The answers of Thos. S. Ellison and E. S. Ellison are not made counter-claims or cross-petitions against any party whatever. They ought, in this state of case, to recover nothing. (Civil Code, sec. 97, subsec. 1; Cain v. Ray, 8 Bush, 343; Anderson v. Ward, 6 Mon., 419; 14 Bush, 210; 1 Duv., 366; subsec. 4, sec. 97, Civil Code.)

3. The grantor, T. J. Ellison, consented to the mortgage to appellant. He arranged for and contrived it, and it was fully approved by him. Equity will not permit a vendor or grantor to induce others to loan money upon real estate by assertions that it was unencumbered, and afterwards assert against appellant a lien in existence when he caused the loan.

4. Mrs. Hoover alone can take advantage of her coverture. Her co-defendants could not do it; besides, the property was her separate estate. (Hiram v. Griffin, 8 Bush, 264.)

Alexander v. Ellison, &c.

5. It is a palpable fraud to have money expended upon repairs to houses, to improve the joint estate of appellees, and let Mrs. Hoover escape upon the plea of infancy. Appellant should be substituted to the lien of the adult defendant, E. S. Ellison, for these repairs, without which the property would be comparatively worthless.

HORD & TRABUE FOR APPELLEES.

1. Mrs. Hoover pleads both infancy and coverture to the first mortgage, and coverture to the second. It is also admitted by the pleadings that her interest in the property was separate estate. The mortgages, therefore, are clearly invalid. (Sec. 17, art. 4, chap. 47, Rev. Stat.)

2. Mrs. Hoover's interest in the real estate is no gift. The deed clearly contravenes the proposition.

3. But if it was a gift, the mortgages were not made with the statutory consent of the donor.

4. A power given by a deed or will to sell and convey property, does not confer the power to mortgage. (Kent's Comm., vol. 4, 331; 3 Hill, 366.)

5. The mortgage of the personalty, so far as Mrs. Hoover is concerned, is invalid. Her husband was not a party to it.

CHIEF JUSTICE COFER DELIVERED THE OPINION OF THE COURT.

October 24, 1872, T. S. Ellison and his wife, in consideration of "four thousand dollars hereafter to be paid to the parties of the first part by the parties of the second part, *or to be accounted for by them in the final distribution of the estate of the parties of the first part,*" sold and conveyed to their son, E. S. Ellison, and their daughter, Ellen M. S. Hoover, then the wife of J. R. Hoover, property known and described as the "Burksville Male and Female Academy," together with all the land and appurtenances thereunto belonging. The interest conveyed to Mrs. Hoover was declared to be for her separate use.

The deed was acknowledged and recorded on the 30th of the same month, and on the first day of November of the same year, E. S. Ellison and Mrs. Hoover executed a mortgage to the appellant, Mrs. N. G. Alexander, whereby they

mortgaged to her the property embraced in the deed from
T. S. Ellison to secure the sum of $1,500 loaned them,
as the mortgage recites, "for the purpose of repairing the
Burksville Male and Female College deeded to them by
Thos. S. Ellison and wife."

October 14, 1873, they executed to Mrs. Alexander a.
second mortgage on the same property, and on certain furni-
ture, &c., in the building, to secure a further loan of $806.15.
made to them.

To a suit by Mrs. Alexander to enforce her mortgages,,
Mrs. Hoover pleaded that she was an infant when she exe-
cuted the first mortgage; that she was a married woman
when she executed each of them, and that her husband did
not unite with her in either.

T. S. Ellison being made a defendant, filed an answer, in
which he stated that two thousand dollars of the considera-
tion recited in his deed to his son and daughter—one thou-
sand to each—was given to them as an advancement, and
that the remaining two thousand was to be paid by them,
and for that sum he asserted a lien on the property, which
he claimed was prior and superior to any lien created by the
mortgages.

In an amended pleading, Mrs. Alexander alleged, in sub-
stance, that T. S. Ellison, being the owner of the Academy
property, and desirous to have a school taught therein by
his son and daughter, and the daughter's husband, all of
whom were professional teachers, but not being able and:
willing to repair and fit up the property so as to fit it for
school purposes, agreed with her and his son and daughter
that he would convey the property to them as an advance-
ment, to enable them to borrow money from her to fit up
the property, and that the deed to the property and the first

Alexander v. Ellison, &c.

loan and mortgage were made pursuant to that agreement. She also alleged that the second loan was made for the purpose of improving the property, and to buy furniture, &c., to refit the building, and was made with the consent of T. S. Ellison; that the money loaned by her had been used to repair, improve, and re-furnish the property, and had greatly enhanced its value, and that the property was unfit for use without the repairs, &c., made with the money borrowed from her.

While the action was pending, T. S. Ellison died, leaving a will, which was probated, and his executrix having qualified, the suit was revived against her. She filed an answer, in which she controverted the facts set forth in the amended pleading above referred to.

On final hearing, the court adjudged that the executrix had a lien prior and superior to the mortgage liens of Mrs. Alexander; that the mortgages were void as to Mrs. Hoover, except as to some personal property, and directed the real estate to be sold, and so much of the proceeds of the sale as was necessary for that purpose to be applied to satisfy the judgment in favor of the executrix, and that one half of the residue, if any, be paid to Mrs. Alexander, and the other to Mrs. Hoover.

From that judgment Mrs. Alexander has appealed.

Her counsel contend—

1. That if a lien was retained in the deed for the purchase money, the vendor cannot be permitted to set it up against her in violation of the agreement set up in her amended petition.

2. That although Mrs. Hoover may not be bound by the mortgages, still Mrs. Alexander is entitled to reach her interest in the property through E. S. Ellison, who, if he

should pay the mortgage debts, will, as they contend, be entitled to a lien on Mrs. Hoover's interest to reimburse him.

The uncontradicted evidence of Mrs. Alexander shows that, before she loaned the money, T. S. Ellison stated to her that he had given the property to his son and daughter; that she told him she would not loan money to them without security, and that in reply he told her he had no money to let them have, but they could mortgage the property and make her safe.

Whether this was before or after the execution of the deed does not appear with certainty, although Mrs. Alexander thinks it was after the deed was made; but she distinctly states that she did not know the stipulations of the deed when she made the loans.

These facts are, we think, sufficient to give her priority. After being told that he had given the property to his son and daughter, and that they could mortgage it to secure the loan, she had a right to rely upon his assurance, and having done so, it would be inequitable to allow him to disappoint her by setting up a prior lien, which will result in the loss of a part, and perhaps all, of the money loaned on the faith of a security, which she had a right, from his statements, to assume would be perfectly good.

If he had made no statement to her she would have been affected by constructive notice, and her lien would have been subordinate to the lien retained in the deed, if there be any; but his statements were calculated to create the belief that he had given the property, and consequently it was unencumbered. He cannot be permitted to say that she had constructive notice of a fact which his statements made to her authorized her to believe did not exist.

Alexander v. Ellison, &c.

3. It is contended that although the mortgages are void as to Mrs. Hoover, E. S. Ellison, being liable to Mrs. Alexander, would, upon paying the whole debt, be entitled to a lien upon Mrs. Hoover's interest in the property to reimburse him her share of the expenditure for the joint estate; and upon the principles of equitable subrogation she is entitled to enforce his equity against Mrs. Hoover.

The rule which allows a creditor to resort to any security held by one of several debtors for his indemnification, in case he is compelled to pay the debt, is familiar to the chancellor, and it would seem not to be a material circumstance that the person furnishing the security is not himself liable for the debt, nor is it material that the security is one which the debtor has by operation of law rather than by contract.

At the common law if there are two tenants in common, or joint tenants of a house or mill, and it should fall into decay, and one is willing to repair and the other is not, he that is willing to repair shall have a writ *de reparatione facienda;* for owners are bound, *pro bono publico*, to maintain houses and mills which are for the habitation and use of man. (Story's Equity, section 1235.)

Chancellor Kent says: "One joint tenant, or tenant in common, can compel the others to unite in the expense of necessary reparations to a house or mill belonging to them; though the rule is limited to those parts of the common property, and does not apply to fences inclosing wood or arable land. (4 Kent, 370; see also Anderson v. Greble, 1 Ashmead,. 136; Adams' Equity, p. 267; Wash. on Real Property, vol. 1., p. 421.)

Whether the writ *de reparatione facienda* could now be resorted to, to compel a recusant tenant to unite in making needed repairs, we need not decide. We only refer to the

subject for the purpose of showing that the common law
recognized the legal obligation of each co-tenant to bear his
just proportion of the necessary reparation of houses on the
common estate, when one or more desired that such repairs
should be made.

That there should be an obligation enforceable in some
form seems to be necessary to prevent injustice and wrong,
and to grow out of the relation in which the parties stand to
each other with respect to the common estate.   Whatever
injures or benefits one co-tenant is an injury or benefit to all
the others.   If one makes repairs the others receive a part
of the benefits, and they ought not to be permitted, by
refusing to unite in making necessary repairs, to compel
their co-tenant to bear the whole expense, or to allow his
interest to suffer because they are reckless of their own.

Growing out of the community of interest existing be-
tween co-tenants are certain well established reciprocal rights
and obligations.   The possession of one is the possession
of all, and one may not buy an outstanding title or encum-
brance, and set it up against his fellows.   This latter doc-
trine has been applied by this court even after partition.
(Venable v. Beauchamp, 3 Dana, 325.)

But it was held in that case, that if the title purchased
by one tenant was available, the purchaser was not only
entitled to contribution from his co-tenant, but also to a lien
on the land for the sum to be contributed.

These principles spring out of the privity between the
parties, and the fidelity and good faith which the connection
implies.

Upon like principles, it would seem that when houses sit-
uated on the joint property are falling into decay, and one
tenant out of his own means makes reparation, he should

not only be entitled to contribution, but should be secured by a lien on the interests of his co-tenants, especially if they refused, or, being under disability, are unable to con-- sent to bear their shares of the expense.

Of course such expenses should be repaid out of the income from the property, when that is practicable.

But in this case that is not practicable. Neither E. S. Ellison nor Mrs. Hoover make any objection to the sale of the property to pay the balance due to the executrix of their father's will, and Mrs. Hoover's interest has now been con-- verted into money, which the court below has ordered to be. paid over to her.

The repairs made with Mrs. Alexander's money may be assumed to have increased the value of the property, and it is contrary to natural justice that Mrs. Hoover shall reap the benefit of the repairs by receiving a full share of the pur- chase money, and refuse to contribute to reimburse her co-tenant, who is liable to Mrs. Alexander for the money expended in making the repairs.

Judge Story, after discussing the rule of the common law in respect to contribution by co-tenants for paying the cost of repairs, says:

"But the doctrine of contribution in equity is larger than it is at law; and, in many cases, repairs and improvements will be held to be not merely a personal charge, but a lien on the estate itself." (Story's Equity, section 1236.)

Whether the cost of improvement could, under any cir-- cumstances, be made either a personal charge against a tenant not consenting or under disability, or a lien upon his interest in the estate, we need not now decide. But that necessary repairs should be made a charge on the estate when one co-tenant refuses to join in making them, or, from

disability, is incapable of doing so, seems to us to be warranted, not only by sound principles of equity, but to be often demanded by the best interest of the non-consenting tenant.

This case presents a striking illustration of the reasonableness and justice of such a rule.

The property, when conveyed to Mrs. Hoover and her brother, was so out of repair as to be unfit for the use to which it was adapted, and to which she and her father and husband designed it. to be applied for her benefit. It was conveyed to her as separate estate, and under the statute then in force neither she, nor she and her husband, could encumber it by contract, without the order of a court of equity. (Sec. 17, art. 4, ch. 47, R. S.)

Unless the property could be charged in equity for repairs made by the co-tenant, then it must follow, that unless he was willing to do so at his own expense, the property must remain unfit for use, and worthless to both.

We therefore think we are warranted, upon principles of justice and honesty, in holding that E. S. Ellison will, if he pays the debt due to Mrs. Alexander, have a lien on Mrs. Hoover's interest in the property to secure the contribution she is bound by the rules of the common law to make to him for expenses incurred in making the repairs.

To hold otherwise would leave the property to go to ruin to the injury of both tenants, or to compel the tenant desirous to repair to go into equity to obtain a sale. This he might not desire to do, and it is worthy of grave consideration whether there is not something in the relation of joint owners which forbids that one shall be compelled to sell his interest because of the recusance or disability of the other.

Nor is it less important to consider whether a tenant under disability is not more likely to lose his estate by compelling his co-tenant to resort to a court of equity to obtain a sale than by allowing him to charge it with a lien.

3. It is a familiar rule in equity, that if a debtor has a security to which he can resort for indemnity in the event that he pays the debt, that such security inures to the benefit of the creditor, who may, if he chooses, resort to it for the payment of the debt.

E. S. Ellison has such a security in the equitable lien existing in his favor on Mrs. Hoover's interest in the property, and has a right to subject it to the extent of one half of the money borrowed of Mrs. Alexander, and used in making necessary repairs on the property.

Wherefore, the judgment is reversed, and the cause remanded for a judgment in conformity to this opinion.