HERMAN SCHUSTER; APPELLEE, V. ANTON SCHUSTER ET AL., APPELLANTS.

FILED APRIL 13, 1909. No. 15,645.

1. **Tenancy in Common:** ACCOUNTING. A tenant in common who is in sole, exclusive and adverse possession under claim of title, is liable to his cotenant for an accounting for rents and profits.

2. **Limitation of Actions:** ACTION FOR ACCOUNTING. An action for the recovery of rents and profits from a cotenant is not barred by the statute of limitations until four years have elapsed from the accruing of such action.

3. **Tenancy in Common:** ACTION FOR PARTITION AND ACCOUNTING. A., J., L., and H., brothers, by joint contributions of labor and money, purchased 320 acres of farm land, taking the title in the names of all the brothers. The evidence examined, discussed in the opinion, and *held* the brothers are tenants in common, and H. may lawfully prosecute and maintain an action for partition and for rents and profits.

APPEAL from the district court for Polk county: BENJAMIN F. GOOD, JUDGE. *Affirmed in part and reversed in part.*

*J. J. Sullivan* and *J. G. Reeder,* for appellants.

*W. M. Cornelius, contra.*

DEAN, J.

The Schuster family came to the United States from Austria in 1877, arriving in Platte county, Nebraska, in midsummer of that year. The members of the family involved in this action consist of the four sons, Anton, Julius, Louis and Herman, who were all minors when they came to America; Anton, the eldest, then being about 15 years of age. After a brief residence in Columbus the family, consisting of the parents, the four sons, and one or more minor children who are not involved in this suit, moved onto a rented farm in Platte county upon which they resided and farmed until 1885 or 1886, when the

father of the household and the boys together purchased a farm in Polk county, taking the title in the father's name, and upon which for many years was maintained the Schuster family home, final payment of the purchase price being made about the year 1895 from the proceeds of the farm and the joint earnings of the father and his boys. The testimony shows that, by the industry and united effort of the father and his boys, both before and for a period long after the latter attained their majority, considerable property, both real and personal, besides the home farm, was accumulated by them and held jointly.

This action was brought in Polk county by Herman Schuster, plaintiff and appellee, the youngest of the brothers, and who is hereinafter called the plaintiff, for an accounting of rents and profits and for a partition of 320 acres of farm land in Polk county, purchased, as he alleges, and paid for jointly by him and his brothers, the record title thereof standing in the name of himself and the defendants.

In June, 1899, the plaintiff, who testifies he was then 27 years of age, went to the city of Columbus to engage in the business of manufacturing scales, and it appears the father and the sons were then the owners of three quarter sections of land, one quarter section being the home farm with the title in the name of the father, and a half section with the title in the names of the four sons jointly, and in which latter tract the father has no claim or interest, about $3,600 in cash, and a considerable amount of personal property, all of the land having been bought and paid for by the joint earnings of the family and from the sale of the products of the farms. The ownership of the half section of land standing in the names of the Schuster brothers, parties hereto, and the right of plaintiff to participate in the rents and profits arising therefrom are the questions in dispute between the plaintiff and the defendants.

In his petition the plaintiff alleges, in substance, that himself and the defendants, Anton, Julius and Louis

Schuster, who are hereinafter called the defendants, "now are, and for more than five years have been, seized in fee and tenants in common each of the undivided fourth of the S.E.¼ of section 11 and the N.W.¼ of section 13, all in township 15, range 3 W., in Polk county, Nebraska"; that defendants have exclusively used and occupied said premises for 8 years; that the rental value of plaintiff's interest therein is $160 a year and is unpaid.

The defendants filed a joint answer, denying generally the allegations of the petition, and alleging that on May 26, 1890, the defendants Anton and Julius Schuster purchased and paid for said section 13; that "title to said premises * * * was taken in the name of A., J., L. & H. Schuster Bros."; that in February, 1893, defendants Anton and Julius Schuster purchased said section 11 for $4,400, and that "title was taken in the name of defendants Anton Schuster, Julius Schuster, and Louis Schuster and plaintiff Herman Schuster," in pursuance of an agreement with plaintiff, which reads: "May 26, 1890. It is herewith agreed that Louis and Herman Schuster may, after they become of age, obtain for home purpose from Anton and Julius Schuster a part of N. W. 13-15-3 by paying the purchase price for it. (Signed) Anton Schuster, Julius Schuster, Louis Schuster, Herman Schuster"; that it was the understanding between the parties that plaintiff would assist in the work and management of the land, so that by united effort they might accumulate property and build up a large and profitable business; that the written contract and oral agreement were made "for the purpose of encouraging said Herman Schuster in said work, and upon the express promise of said Herman Schuster as above set forth, and, relying thereon," that the defendants Anton and Julius Schuster consented that legal title to an undivided one-fourth part of said premises be taken in the name of plaintiff; that plaintiff has always failed "to perform his part of said contract, and has never contributed one cent toward the payment of the mortgage assumed as a part of the purchase price of one of the

parcels of land above described"; that plaintiff engaged in a separate scale manufacturing business on money supplied by defendants, and retained the proceeds of the business.

Plaintiff's reply denied all the material allegations of new matter in the answer, admitted title to the land was taken in the name of plaintiff and defendants, alleges he was a minor when the written contract was entered into, and that he was never bound thereby.

Upon the issues thus presented, the district court, upon trial, rendered judgment of partition in favor of plaintiff and against the defendants, finding and decreeing that plaintiff was an owner of an undivided one-fourth part of the premises involved herein. Upon the question of rents and profits, judgment was rendered against the plaintiff and in favor of the defendants. The usual exceptions were taken by each of the parties, and the cause is brought here for review.

After a careful examination of the entire record, we are convinced the proofs sustain the material allegations of plaintiff's petition. Anton vigorously contends the 320 acres in dispute were bought and paid for without any contribution of either time or money from the plaintiff, but two of his own letters, one under date of June 1, 1906, and one under date of June 16, 1906, written by him to Herman, utterly refute his contention on this vital point. In the letters he corroborates the testimony of plaintiff in almost every essential particular. The course of Anton's testimony is so devious that he is met at almost every material point by contradictory statements formerly made by himself in his letters to Herman.

The plaintiff testified that a settlement was had between himself and his father and his brothers concerning the cash on hand in the common family fund just before his departure for Columbus in 1899, and that the money then apportioned among them was derived in large part from the sale of farm products from the father's 160 acres and from the 320 acres owned by the four boys. He testi-

fied the total amount of cash then on hand was approximately $3,600, and that it was divided into five parts, the father and each of the boys receiving approximately $730. This was denied by Anton and the other defendants. They admitted that money in about the sum named by Herman in his testimony was handed to him about the time of his departure for Columbus, but that it was not given as a settlement or a distribution of the cash ·on hand, but as a gift from the family. On this point the testimony of Anton and his codefendants is met and overcome by Anton's letter of June 1, 1906, wherein he says to Herman, among other things: "Wel Brother Herman i talkt with Julius and Louis and pa—they said nothing about wether they would or would not pay you a rent. Father said you have a perfeck right to come and work and dig monie out of your ground. i thing you should have somting for it, even if we are looser by it, as we have not made waitches by farming it you can figure it yourselfe we had 730 apice wen you left and now 2135 you can also figure it out yourself how much we made when you was with us. You should know where the money went to but mony or no mony it is ouer home and other people shal not kik us around any more. * * * Wy dit you not come out last January the 15th—dit i not tell you to that effect. you dit not come also you dit not answer me my letter from January the 10th. my mony will be with me after July 20th, if you need it come than and get it. Al you need is a quit claim deed for one fourth (1/4) your interest in n. w. 1/4 of section 13-15-3—also s-east 1/4 quarter 11-15-3—Polk county, Nebr. the land will never be divided in 40's but in strips runing through the whole quarters. You cannot nor any of us sell to outside partys unles by (mutual agreement of all concerned)." In the trial court Anton testified that the plaintiff was only three years old when they arrived in the United States, and was thus, in his tender years, a charge upon the family and a hindrance rather than a help, and that he never contributed anything after he reached his majority to aid in farming

or stock-raising or to assist in the common enterprise of accumulating property. The plaintiff testified that he began attending school before the family left Austria, and that he was 8 years of age upon their arrival at Columbus, and that he put in practically all of his time from early boyhood until he was 27 years of age in farm work and kindred occupations upon the lands of the family in the furtherance of the joint enterprise, and that the proceeds of all of his skill and labor went into the common family fund. Again Anton, after denials on the witness stand, corroborates the statement of Herman by his letter of June 16, 1906, which he identifies as having been written by himself, and which reads as follows: "Silver Creek, Neb. 6-16 1906.  Dear Brother Herman. In regard to yours of the 12th i state that it was written by all 3 of us.  it is not ouer intention to bet you or run you short.  ouer time and all we saved went to Father up to 21 yeahrs and even latter and it is only fair if yours goes the same way. . Then we commenced with nothing as the cattle that was on hand would hardly have covered the then existing indeptenes.  all the mony that was payd for the land up to 1,000 dollars was on hand before you reashed your age, afterwards you put in six yeahrs with us, and through those 6 yeahrs each one of us saved 218 Dollars a yeahr. the land was bought for home purpose and not for selling or speculating.  also a deed to that effect will never be signed by any of us.  Louis and Julius do not want it and i myself do not care for it$^c$ (i am about workt out) but in order to have piese in the family and as i do consider you as a brother yet, i offer you 2,000 for your share of it.  it will be the bigest 6 yeahrs wages you ever had. *  *  *  You can acept my offer or go to Law.  i thing i .have don the right and actet right.  *  *  *  Yours truly, (signed) Schuster Bros." It is significant that Anton's letter of June 16 corroborates Herman in regard to the latter's age. He says: "All the mony that was payd for the land up to 1,000 dollars was on hand before you reashed your age, afterwards you put in six yeahrs

with us." Herman testified 'he was 27 years of age in 1899 when he left home, and this in effect is what Anton says in his letter, which contradicts his own testimony at the trial and also the testimony of both of his codefendants upon this point. Upon the subject of the litigation herein, the letters of Anton are their own commentary. They require no labored analysis. They disclose a recognition of Herman's title as a tenant in common with his brothers, from which there is no escape. Anton with pen in hand writing letters in an unguarded way in June, 1906, furnishes testimony upon the subject in controversy more convincing than when, in October, 1907, as a self-interested witness, he testifies upon the same subject. Both letters were identified, introduced in evidence, and attached as exhibits to the record, and form a material part of the case. None of the defendants disavowed their contents at the trial.

The defendants undertake to explain the reason why the first tract was taken in the names of all of the brothers jointly in 1890, and to this end, besides oral testimony, they introduce as exhibit 4 the original contract that is set out in full in the outline of defendants' answer in this opinion. This instrument is of doubtful validity. When it was dated, plaintiff was yet a minor, and he testified he had no recollection of signing it. Besides, the proof shows the tract then purchased was paid for by the contributions of all the brothers. *Cameron v. Nelson,* 57 Neb. 381; *Dailey v. Kinsler,* 31 Neb. 340; *Pillsbury-Washburn Flour-Mills Co. v. Kistler,* 53 Minn. 123; *Hansen v. Berthelsen,* 19 Neb. 433

The defendants' attempted explanation of their reasons for taking the second tract in the names of the four brothers in 1893 is even less satisfactory than their attempt to explain the purchase of the first tract in that manner. When the second tract was purchased, a part of the purchase money was paid at the time, and notes and a mortgage given by all the brothers for the deferred payments, and the obligations so incurred were paid by all of them.

The plaintiff thus shared with the defendants the burdens of the joint enterprise, and must not now be deprived the privilege of sharing with them the benefits. From the record before us, we therefore conclude the judgment of the district court is right in holding plaintiff to be an owner of an undivided one-fourth part of the half section of land and a tenant in common with the defendants.

The plaintiff alleges that defendants have exclusively used and occupied the half section of land in dispute for eight years, and he contends that he is entitled to remuneration for his share of the premises so occupied by them in the sum of $160 annually. The answer alleges, and the proof clearly shows, that the defendants denied plaintiff's title and exclusively occupied and used the land continuously ever since the year 1899. The proof also shows the defendants not only alone occupied the common property, but they held possession thereof adversely under a claim of sole ownership to the exclusion of their cotenant from the enjoyment of any part of the premises, thus bringing themselves substantially within the rule announced by this court in *Names v. Names*, 48 Neb. 701, which holds: "A tenant in common who alone occupies the common property, and holds possession adversely as sole owner, or where he excludes his cotenant from the enjoyment of the premises, is liable to his cotenant for the rents and profits." The doctrine of the *Names* case, *supra*, which was unknown to the common law, finds support in many jurisdictions, and among them are the following: *Edsall v. Merrill*, 37 N. J. Eq. 114, which holds: "A tenant in common who prevents his cotenants from obtaining from the premises held in common their just shares of the income the premises are capable of yielding, or who takes possession of the whole, and uses them as his own, and thereby makes a profit, is bound to account to his cotenants either for the rental value of the premises or the profit he has made." See, also, *Roberts v. Roberts*, 55 N. Car. 128; *Woolley v. Schrader*, 116 Ill. 29. *Medford v. Frazier*, 58 Miss. 241, holds: A cotenant "will

be liable only where it is shown that he has occupied more than his rightful share of the common estate, and then only for the rent of the excess." *Cain v. Cain,* 53 S. Car. 350, holds: "An occupying tenant using more than his share of the common property is accountable to his cotenants for the net profits arising from such use." *Berry v. Whidden,* 62 N. H. 473, holds, in substance, that a tenant in common who occupies and receives the income of the whole estate by permission of his cotenant, without any agreement to account, is not liable to his cotenant for a share thereof where it does not appear that he has received any more than his share of the rents and profits of the common estate. *Shiels v. Stark,* 14 Ga. 429, holds: "Occupancy by one cotenant of the joint property, by the consent of the other, does not necessarily relieve him from the payment of the rent. At common law, one tenant in common was not liable to his companion, either for waste or the profits of the joint estate. By the Statutes of Westminster II, cc. 6, 22, and 4 Anne, c. 16, sec. 27, joint tenants, and tenants in common, have an action for waste as well as an account for the profits." In support of the above propositions the court say: "According to the doctrines of the common law, one tenant in common was not liable to his companion, either for waste or the profits of the joint estate, although he may have embezzled the profits, or appropriated the whole to himself. The injustice of this doctrine was obviated in England by the Statutes of Westminster II, cc. 6, 22, and 4 Anne, c. 16, sec. 27. The first giving to joint tenants and tenants in common an action for waste; and the second an account for the profits. (5 Bac. Abr. 304.) It is to be presumed, from the reasonableness of their provisions, that these acts * * * are everywhere treated as the general law of this country. * * * And the court say in *Thompson v. Bostick,* McMul. Eq. 75: 'There is nothing, I think, in the objection that the defendants did not receive rent, but cultivated the lands themselves. To cultivate and have the use of lands *is to receive the rents and*

*profits,* though the occupier is his own tenant.'" See, also, *Ward v. Ward's Heirs,* 40 W. Va. 611, 52 Am. St. Rep. 911; *Bates v. Hamilton,* 144 Mo. 1, 66 Am. St. Rep. 407. The defendants' answer asserts sole and exclusive ownership. They attempted to substantiate this claim at the trial, thus denying plaintiff's title, and hence, also, his right to participate in any part of the rents and profits arising from the land. The plaintiff fairly tendered in his petition an issue upon the question of the rents and profits and supported it by proof upon the trial. An examination of the record and the law applicable to the facts therein disclosed convinces us that fair dealing demands an accounting between the parties. We conclude, therefore, that the learned trial court erred in rendering judgment against the plaintiff upon this feature of the case.

It is therefore ordered that so much of the judgment as is in favor of the defendants be, and it hereby is, reversed and the cause remanded, with directions to take an accounting of the rents and profits of the land in controversy herein for a period of four years next before the beginning of this action, and to render a judgment in favor of plaintiff and against the defendants therefor in such amount as plaintiff may be entitled to recover in accordance with the views expressed in this opinion, and that in all else the judgment of the district court be, and it hereby is, affirmed.

JUDGMENT ACCORDINGLY.