## Larmon v. Larmon, et al.

(Decided January 26, 1917.)

### Appeal from Warren Circuit Court.

1. **Tenancy in Common—Repairs and Improvements—Contribution.—** At common law if there are two tenants in common, or joint tenants of a house, and it should fall into decay and one is willing to repair and the other is not, he that is willing to repair may compel his co-tenant to contribute to the repairs.

2. **Life Estates—Repairs and Improvements.—**A life tenant cannot charge the corpus of the estate with improvements, nor is he entitled to compensation for the enhancement of the property by reason of such improvements.

3. Estates—Merger.—Whenever a greater estate and a less coincide and meet in one and the same person without any intermediate estate, the less estate is immediately annihilated by being merged into the greater.

4. Estates—Merger.—To constitute a merger it is necessary that the two estates be in one and the same person, at one and the same time, and in one and the same right.

5. Estates—Merger.—While the rule relating to merger is said to be inflexible at law, equity will prevent or permit a merger of estates according to the intention of the parties and to protect the beneficial interests of the holder of the two estates.

6. Joint Tenancy—Mutual Rights, Duties and Liabilities.—At common law one joint tenant is not required to pay rent for the use and occupation of the premises while he remains in possession, in the absence of an agreement to the contrary, unless he excludes his co-tenant. But, under the modern doctrine, a joint tenant is liable to account for occupying more than his share of the land, except as to such rents and profits as accrued from improvements made by his own skill, labor and capital.

7. Joint Tenancy—Contribution.—As a general rule, one joint tenant is entitled to contribution from his co-tenant for liens and incumbrances paid by him, including mortgages, taxes and ground rent.

8. Joint Tenancy—Improvements.—Where one joint tenant in remainder bought the life estate and improved the property during his occupation as life tenant, and occupied the property as joint tenant after the expiration of the life estate, he cannot set-off his improvements made during his life tenancy against the rents which he owes for his occupation as a joint tenant.

9. Joint Tenancy—Sale For Division of Proceeds—Costs.—In an action to sell land jointly owned for a division of the proceeds, the parties will pay the costs in the proportion of their respective interests in the land sold.

W. B. GAINES for appellant.

SIMS, RODES & SIMS for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Upon the death of Conley J. Larmon, of Warren county, in 1893, fifty acres of land near Alvaton were allotted to his widow Mary Larmon, as dower.

Conley Larmon left six children surviving him. One son, Clem C. Larmon, has since died, leaving two infant children, Carlton Larmon and Virginia Larmon.

The house and farm were reduced to a very bad condition during the time they were occupied by the widow. The roof leaked, the plastering was falling from the ceiling, the cellar wall had given way, the fences were gone,

and the farm badly run down. It became apparent that the widow was unable to preserve the place for the remaindermen in the condition in which she had received it. So, by a deed executed in 1908, the widow and four of the adult children conveyed their interests in the fifty acre dower tract to John H. Larmon the remaining adult child of Conley Larmon, for $1.900.00.

Upon his purchase John Larmon made extensive improvements upon the residence and outbuildings. He constructed a road from the turnpike to the house, built an addition to the barn, a garage, a wood house, a smoke-house, and a servants' house; concrete walks, a porch and hearths; put a tin roof upon the residence, and repaired its basement and pillars; repaired the roof of the dairy barn; put in a lighting plant and water works; put up 450 rods of wire fencing; painted the house—all at a cost of $1,765.00.

Immediately thereafter, John Larmon took up his residence in the house and has ever since continued to reside upon the dower tract. His mother, Mary C. Larmon, died in 1913.

On April 24, 1914, this action was brought by the infants Carlton Larmon and Virginia Larmon, through their guardian, against John H. Larmon, for a division of the fifty acres and an accounting for the plaintiffs' portion of the rents since the death of the widow—a period of one year.

By answer John H. Larmon denied that the land could be divided without materially impairing its value; and, by way of counter-claim he alleged that the improvements he had put upon the land had enhanced its salable value to the extent of $1,200.00, and asked, in the event the court should find that the land could be divided, that it be done so as to locate his improvements upon his five-sixths interest in the land, when divided; and, that in making said division the improvements be disregarded.

Upon proof taken, the court found the land to be indivisible between the owners without materially impairing its value, and ordered a sale of the tract as a whole and a division of the proceeds. It allowed John H. Larmon nothing for his improvements.

The judgment was entered on March 13, 1915, and further held that the reasonable rental value of the infants' one-sixth interest in said land from the death of Mary Larmon, the widow, to the time the judgment was entered, was $75.00, for which sum the guardian took

judgment against the defendant John H. Larmon, who is now prosecuting this appeal.

1.   Appellant's counsel frankly concedes that the law does not permit a life tenant to make improvements and burden the remaindermen with their cost; and, that the owner of the fee is entitled to receive his land at the expiration of the life estate, in the same condition, natural wear and tear excepted, as it was at the beginning. He insists, however, that this is not the case of a life tenant seeking to charge the remaindermen with improvements made by the life tenant, but a case between joint tenants; and, he invokes the doctrine well-established in this state, that one joint tenant can, for the purpose of preserving the common property, compel the other to contribute to the expense of necessary repairs to a house belonging to them jointly.

This doctrine was fully recognized in Alexander v. Ellison, 79 Ky. 153, where the court said:

"At the common law if there are two tenants in common, or joint tenants of a house or mill, and it should fall into decay and one is willing to repair and the other is not, he that is willing to repair shall have a writ *de reparatione facienda;* for owners are bound, *pro bono publico,* to maintain houses and mills which are for the habitation and use of man. Story's Equity, sec. 1235."

See also Coke Litt. 54 b, 200b; 4 Kent 370; Ward v. Ward, 40 W. Va. 611, 52 Am. St. Rep. 911, 29 L. R. A. 449, and note.

But, as above stated, the right of a life tenant against the remainderman is not so far reaching.

In Graves' Admx. v. McConnell, 144 Ky. 607, it was said:

"Appellant contends that, as the improvements were permanent and served to enhance the remainder interest, the value of the improvement should be apportioned by the chancellor between the life tenant and remaindermen. In some jurisdictions this may be done, but that rule has never been adopted in this state. Here the rule is that the life tenant can not charge the *corpus* of the estate with improvements, nor is he entitled to compensation for enhancement of the property by reason of such improvements. As is said in the case of Frederick v. Frederick, 31 Ky. L. R. 583: 'It is a sound rule of public policy which denies the life tenant the power to charge the estate for his improvements, although they may enhance the

value of the property.' To the same effect see Henry v. B'rown, 99 Ky. 13; Wilson v. Hamilton, 140 Ky. 327.''

See also Robsion v. Gray, 29 Ky. L. R. 1297, 97 S. W. 347; Stovall v. Mayherd, 173 Ky. 212.

So, if appellant held his estate in joint tenancy or as a tenant in common with the infant plaintiffs at the time he made the improvements immediately after his purchase of the life estate, he would be entitled to contribution from his co-tenants as to the extent that his improvements went to preserve the buildings then upon the land; but, if he was then a life tenant, he would have no such right, since it will be presumed, in that case, that the improvements were made for his personal use and comfort.

In support of John H. Larmon's contention it is suggested that his purchase of the life estate made him a tenant in common under the doctrine of merger.

It is a familiar doctrine that where the remainderman acquires title to the life estate, a merger occurs in which the life estate is extinguished. The doctrine is stated by Blackstone, as follows:

''Whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated; or, in the law phrase, it is said to be *merged,* that is, sunk or drowned in the greater. Thus, if there be a tenant for years, and the reversion in fee simple descends to or is purchased by him, the term of years is merged in the inheritance, and shall never exist any more.'' Com. 177.

See also 4 Kent 103; Clark v. Parsons, 69 N. H. 147, 76 Am. St. Rep. 157; Pynchon v. Stearns, 11 Met. (Mass.) 312, 45 Am. Dec. 207; Mangum v. Piester, 16 S. C. 316; McCreary v. Coggeshall, 74 S. C. 42, 7 L. R. A. (N. S.) 433, 7 Ann. Cas. 693; Forthman v. Deters, 206 Ill. 159, 99 Am. St. Rep. 145, and note.

To constitute a merger it is necessary that the two estates be in one and the same person, at one and the same time, and in one and the same right. Blackstone, *supra;* 10 R. C. L., p. 666; 16 Cyc. 667. While the rule is said to be inflexible at law equity will prevent or permit a merger of estates according to the intention of the parties and to protect the beneficial interests of the holder of the two estates. 2 Pom. Eq. Jur. (3d Ed.) sec. 788.

The doctrine has been recognized by this court in Logan v. Steele, 7 T. B. M. 101; Fox v. Long, 8 Bush 551;

and incidentally, in Hunt v. Phillips, 32 Ky. L. R. 258, 105 S. W. 445.

In Fox v. Long, *supra,* Chief Justice Pryor, speaking for the court, said:

"The appellee is the owner in fee simple of nine-tenths of the land; has purchased or leased the entire life estate of the appellant; and it would be a novel proceeding to permit an action for waste, or a distress warrant to issue for rent, against the party who owns both the greater and the less estate. The less estate has in fact been merged into the greater; the life tenancy has gone out of existence, and no such relation as that of landlord and tenant exists between the parties.

"In this case there is a union of the fee simple estate and the estate for life, by which the estate for life is extinguished. It is difficult to perceive how one can have the fee simple estate and a life estate in the same tract of land. If the life estate is the only estate preceding the estate in reversion or remainder, and the remainderman buys the life estate, or under an agreement as this rents the estate for life, for and during the life of the party entitled to it, the lesser estate is gone, for the fee simple estate includes both."

From this it follows that when John H. Larmon bought the life estate from his mother in 1913, the life estate in his five-sixths interest was extinguished, and he held his five-sixths interest in fee simple. But did the merger, thus accomplished, have the effect of making John H. Larmon the joint tenant or tenant in common with the infant plaintiffs who owned the remaining undivided one-sixth interest in remainder?

It is, however, an established corollary to the doctrine of merger that it will not operate beyond the extent of the part in which the owner has two several estates. Clark v. Parsons, *supra;* Bowlin v. Rhode Island Hospital Trust Co., 31 R. I. 289, 140 Am. St. Rep. 758; 10 R. C. L. p. 668.

In Clark v. Parsons, *supra,* the case, was in principle, identical with the case at bar, Joseph and James Parsons, the life tenant and one of the remaindermen having sold their interests to Berry, leaving one remainder interest unsold and in the hands of the children of Isaac Parsons, a deceased remainderman.

In that case the court said:

"It is claimed that when the life estate and the estate of one tenant in common of the remander were granted to

Berry, a merger of the life estate in the fee was effected by the coincidence of the two estates in one person, and that the life estate in the entire property was thereby extinguished. It is a sufficient answer to say that the life estate in the undivided half of the remainder belonging to Isaac could not merge in the undivided half of the remainder belonging to Berry; neither could the conveyance of the life estate to Berry, be construed as a surrender, or inure to the benefit of Isaac or those who claim under him. 'Merger is co-extensive with the interest merged, as in the case of joint tenants and tenants in common, and it is only to the extent of the part in which the owner has two several estates. An estate may merge for one part of the land and continue in the remaining part of it.' 4 Kent's Commentaries 100, 101; Clark v. Clark, 56 N. H. 105, 113; McLaughlin v. McLaughlin, 80 Md. 115.''

The rule is concisely stated in 16 Cyc. 668, as follows: ''If the owner of a life estate acquires the fee to only a portion of the remainder there will be a merger *pro tanto*, but the life estate in the remainder of the property will not be affected.''

It follows, therefore, that the widow's life estate in the undivided one-sixth of the remainder belonging to the infant plaintiffs did not merge into the undivided five-sixths of the remainder belonging to John H. Larmon, and that John H. Larmon still held an undivided one-sixth interest during the life of his mother, with the remainder in that interest belonging to the infant plaintiffs.

Consequently, at the time John H. Larmon made the improvements, his occupancy of the undivided one-sixth interest of which the infants were the remaindermen, was that of a life tenant, and the law as between a life tenant making improvements and his remainderman, as above stated, applied.

Appellant further contends that the circuit court erroneously charged him with $75.00 rent for the infants' share of the land for the year he occupied it as joint tenant.

At common law one co-tenant is not required to pay rent for the use and occupation of the premises while he remain in possession, in the absence of an agreement to the contrary, unless he excludes his co-tenant. 23 Cyc. 491. The reasons for the rule is, that each ten-

ant is entitled to the occupation of the premises, and possession of one tenant in common is constructively the possession of all, the possession of one being deemed to be for the benefit of himself and his co-tenant. But, under the statute of 4 Ann., chapter 16, sec. 27, and similar statutes adopted in this country, a joint tenant is now liable to account for occupying more than his share of the land, except as to such rents and profits as accrued from improvements made by his own skill, labor and capital, and except where the property is susceptible of a several occupation, in which event a joint tenant in exclusive possession of a part, without hindering the others from the use of their shares, is not answerable to them for profits realized from the portions in his exclusive occupancy. 25 Cyc. 491.

This rule was approved in Nelson's Heirs v. Clay, 7 J. J. M. 158, 23 Am. Dec. 387. See also Johnson's Admr. v. Johnson, 155 Ky. 11; Ward v. Ward, 40 W. Va. 611, 62 Am. St. Rep. 911, 29 L. R. A. 449; Gage v. Gage, 66 N. H. 282, 28 L. R. A. 829, and note; Schuster v. Schuster, 84 Neb. 98, 29 L. R. A. (N. S.) 224, and note.

Appellees had the right, therefore, to maintain their action for rents, and the proof sustained the amount awarded.

Appellant insists, however, that his improvements, to the extent they enhanced the salable value of the land, should, at least, have been set off against appellees' recovery for rent. Unquestionably, the improvements enhanced the salable value of the land greatly more than $75.00. This claim, however, is based upon the theory that the improvements were made by Larmon as joint tenant and not by him as life tenant; and, there are cases holding that the set-off may be made between co-tenants. Hixon v. Bridges, 18 Ky. L. R. 1068, 38 S. W. 1040; Vermillion v. Nickell, 114 S. W. 270.

It is a general rule that one joint tenant is entitled to contribution from his co-tenant for liens and encumbrances paid by him, including mortgages, taxes and ground rent. 23 Cyc. 490; Hogan v. McMahon, 115 Md. 195, Ann. Cas. 1912, C. 1262; Parsons v. Wise, 10 Ann. Cas. 278; American Bonding Co. v. National Mechanics' Bank, 99 Am. St. Rep. 532, and note; Stokeley v. Flanders, (Ky.) 128 S. W. 608.

And, as above shown, this rule has been extended, in this state, so as to give the right of contribution to one co-tenant who furnishes necessary repairs to a decayed house.  Alexander v. Ellison, *supra.*

From this it is argued, that where one joint remainderman repaired the decayed house for the benefit of all, as here, he is entitled to contribution, although he made the repairs during the period of the life estate. This theory, however, completely overlooks the fact that the repairs were made by Larmon as life tenant, and not as the joint tenant of the infant plaintiffs, and that the law does not permit the life tenant to encumber the estate of the remaindermen.

It was the duty of the life tenant to keep up the repairs and preserve the estate, and it is immaterial whether the widow or John Larmon was the life tenant upon whom that duty fell.

To say that a remainderman ought to have the right to preserve the houses belonging to all the remaindermen and be reimbursed therefor, is no answer to the contention of the other remaindermen, since a remainderman has ample protection in his equitable remedy of injunction or for a receiver to take charge of and preserve the premises upon the delinquency of the life tenant.

The circuit court properly refused to set off appellant's claim for improvements against the rent.

Appellant further contends, that the judgment required him to pay all the costs of the action.  We do not think the judgment is to be so construed.  The appellant was liable for so much of the costs as was incurred upon the issue of improvements and rents, and the judgment so determines.  Under the contribution statute, however, the appellees will pay one-sixth of the costs attending the proceedings for the sale of the land, each party being represented by counsel and paying the fee of his own attorney.  Ky. Sts., sec. 489; Thirlwell's Admr. v. Campbell, 11 Bush. 163.

Judgment affirmed.