WILLIAM A. FOSTER, ADMINISTRATOR, V. DENNIS MURPHY.

FILED MAY 3, 1906. No. 14,301.

1. **Probate Court: APPEALABLE ORDER.** An order of a probate court requiring one who had formerly been administrator of an estate to turn over to his successor certain money, claimed by the former to have been given to him as a gift from the intestate, but by the latter that it came to him as administrator of the estate, is appealable to the district court.

2. **Decedents: GIFT.** Evidence examined, and *held* sufficient to sustain a finding that the money in question had come into the hands of the former administrator personally as a gift by the intestate, and not as a part of the assets of the estate.

3. **Witnesses: COMPETENCY.** The interest of the former administrator's wife in the result of such contest is not a direct legal interest within the meaning of the statute which prohibits a person from testifying to any transaction or conversation had with a deceased person, where the adverse party is the representative of such deceased person.

4. **Gift.** The indorsement and delivery of a certificate of deposit, with the intention of making a gift of the deposit thereby represented to the party to whom the certificate is thus delivered, operates as a gift of the fund itself.

ERROR to the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*E. M. Bartlett* and *W. N. Chambers,* for plaintiff in error.

*F. C. O'Halloren* and *E. C. Page, contra.*

ALBERT, C.

On the 30th day of September, 1902, Dennis Murphy, the defendant, filed a petition in the county court of Douglas county for letters of administration on the estate of his brother, Edmund Murphy, deceased. His appointment followed, and afterwards on the 29th day of October, 1902, he filed an inventory, listing certain real estate, and showing that $600 represented a certain certificate of deposit, and $12.58 found on the person of the deceased had come into his possession as assets of the estate. Afterwards, on the 6th day of November of the same year, he filed an amended inventory, again listing the real estate, but omitting the money listed in the former inventory and noting that it had been there listed by mistake. For reasons not necessary to mention he was afterwards removed from his trust, and William A. Foster, the plaintiff, was appointed in his stead. It does not appear that the defendant ever made, or was ever asked to make, a settlement of his accounts as administrator. On the 13th day of May, 1903, the plaintiff made application in writing to the county court for an order requiring the defendant to pay over to him, as administrator, the $600 listed on the first inventory as the proceeds of a certificate of deposit and part of the assets of the estate. The defendant filed an answer, alleging that the certificate of deposit had been indorsed and transferred to him by the deceased during his last illness as a gift and in expectation of death, and that he retained possession thereof until after the death of the deceased. The answer further alleges that in listing the proceeds of the certificate as part of the assets of the estate he acted in ignorance of his rights, and upon the advice of the clerk of the county court and at the request of the bank who had issued the certificate. The county court found that the money belonged to the estate, and entered an order requiring the defendant to pay it over to the plaintiff as the administrator thereof. The defendant appealed to the district court, whereupon the plaintiff filed a motion to

40

dismiss the appeal on the ground that the order was not a final order or determination of the rights of the parties. The motion was overruled and a hearing had on the merits. The district court found for the defendant, and gave judgment accordingly. The plaintiff brings error.

It is insisted that the finding of the district court is not sustained by sufficient evidence. The deceased was a bachelor. His next of kin are the defendant, who resides in Omaha, and two sisters in Ireland. During his last illness he was an inmate of St. Joseph's Hospital in Omaha. Before entering the hospital he deposited $600 in a bank of that city, receiving therefor a certificate of deposit. Aside from some real estate of small value he had no other property, save a trifling amount of money found on his person after his death. He was a laboring man and uneducated. The defendant's wife was sworn as a witness in his behalf. The plaintiff objected to her competency, basing his objection on section 329 of the code, which provides that "no person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness." The objection was overruled, and the witness testified in effect that about two weeks before the death of the deceased she called upon him at the hospital, and he told her that he wanted the defendant to come to the hospital and have the certificate of deposit in question signed over to him; that she and her husband called that evening, and, upon their arrival, the deceased asked one of the attendants to bring him his belongings; that thereupon the attendant retired and soon returned with a pocketbook which she placed in his hands; that he took therefrom the certificate of deposit and handed it to the defendant, saying, "What is there is yours, and if anything should happen you will know what to do with it"; that he then asked an attendant to bring pen and ink, and, when it was brought, asked the defendant to indorse the certificate for him, whereupon the defendant wrote the de-

ceased's name on the certificate, the latter holding the pen at the same time; that he then handed the certificate to the defendant who retained it until after the deceased died. Two of the attendants of the hospital were also sworn and examined on behalf of the defendant. Both corroborate the wife as to the visit of herself and husband to the deceased on the evening in question. One of them testified that on the occasion of that visit the deceased called for his belongings, and she brought him his pocketbook, placed it in his hands and withdrew from the room. The other testified to his request for pen and ink at that time; that she brought them for him, and, like the other, immediately withdrew from the room in accordance with some rule of the hospital. She also testified to a previous conversation with the deceased in which he expressed an intention to give the property to the defendant. The substance of defendant's explanation of his listing the proceeds of the certificate as a part of the assets of the estate is as follows: That he presented it to the bank, but the bank refused to cash it, fearing some trouble in case it did. He then went to the office of the county judge, where he found a clerk to whom he explained the situation with respect to the certificate, and told him that the bank had directed him to get an order from the county judge with respect to its payment. The clerk told him he could not get an order of that kind, and that he had better "put his certificate in for probate." He then made application for letters of administration, and, after his appointment, listed the certificate as cash in the bank. In order to get the money he afterwards indorsed the certificate as administrator. The evidence is ample to show that the defendant included the $600 in the first inventory simply because he was ignorant of his rights, and that he undertook to correct his error in that regard by the amended inventory as soon as he was duly advised.

The indorsement and delivery of the certificate of deposit to the defendant, during the lifetime of the deceased, is conclusively established. That it was thus indorsed and

delivered by the deceased with the intention of making a gift of the deposit thereby represented, is clear. That being true, it acted as a gift of the fund itself. *Crook v. First Nat. Bank,* 83 Wis. 31, 35 Am. St. Rep. 17, and extended note. Whether it be regarded as a gift *inter vivos* or *causa mortis* is immaterial for present purposes, because, as said in the case cited, quoting Cole, J., in *Wilson v. Carpenter,* 17 Wis. 516, "Delivery is essential both at law and in equity to the validity of a parol gift of a chattel or chose in action; and it is the same whether it be a gift *inter vivos* or *causa mortis.* Without actual delivery the title does not pass." The defendant's rights are not prejudiced by his subsequently listing the money as assets of the estate. His doing so was owing to a lack of experience in such matters, and in ignorance of the consequence of such a step. No estoppel arises therefrom, because no one, because of such act, changed his position to his prejudice.

It is also contended that the order of the county court requiring the defendant to pay over the $600 is not a final order, and, consequently, that the district court erred in overruling the motion to dismiss the appeal. The order has all the elements of one that is final. The issue presented by the pleadings was whether the $600 was a part of the assets of the estate or a gift to the defendant by the deceased during his lifetime. The county court found that the money belonged to the estate and entered an order accordingly. We know of no reason why such order would not be final and conclusive unless reversed on appeal or error. It is suggested, however, that the defendant instead of taking an appeal might have paid over the $600 and filed a claim against the estate therefor. Our answer to that is that the county court had already determined that the money belonged to the estate. That question was foreclosed by the order in question, and certainly no claim against the estate could arise from the payment to the administrator of money belonging to it.

Another contention is that the defendant's wife was incompetent to testify in his behalf, her relation to the

defendant being such as to give her an interest in the result of the controversy. The statute prohibiting a person testifying to any transaction or conversation had with a deceased person, where the adverse party is the representative of such deceased person, applies only to those having a direct legal interest, and not to those whose interest is indirect or remote. In *Gillette v. Morrison*, 9 Neb. 395, the court said:

"Counsel for the defendant make the point that plaintiff offered no testimony as to demand of payment of the note of Mumford and notice on Heffley, except Lee P. Gillette, the husband of plaintiff. That under the laws of 1873, Gen. St. p. 582, section 329, this witness, being the plaintiff's husband, and having a direct legal interest in the result of the suit, was incompetent. That hence the plaintiff offered no testimony on that point. The section referred to reads as follows:   *   *   *   'Nor shall any person, having a direct legal interest in the result of any civil cause or proceeding, be a competent witness therein when the adverse party is an executor, administrator, or legal representative of a deceased person.' The note sued on has been treated throughout the controversy as the separate property of the plaintiff. It has not been shown to have been in the possession of Lee P. Gillette, except for the purpose of presentation for payment, which he swears he did by authority of the plaintiff. If it is her separate property, then her husband has no direct legal interest in the result of the suit."

In *Hiskett v. Bozarth*, 75 Neb. 70, it was held that the husband's contingent right of curtesy in the land would not bring him within that section, in an action brought by his wife against the representatives of a deceased person for the specific performance of a contract of the deceased for the sale of land to her. If the husbands were competent witnesses in those cases, we are unable to see why the wife should be held incompetent in this. Counsel rely on *Kroh v. Heins*, 48 Neb. 691. The cases are not parallel. There the witness was not held incompetent because of her indirect interest as mother of the infant defendants, but

because of a direct, personal interest in the subject matter of the suit.

We discover no error in the record, and therefore recommend that the judgment of the district court be affirmed.

JACKSON, C., concurs.

DUFFIE, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.