284

MARY E. MAST, APPELLEE, V. ADA MURRAY ET AL., APPELLANTS.

FILED JANUARY 13, 1932. No. 28103.

A. L. Tidd, for appellants.

J. A. Capwell, D. O. Dwyer, W. L. Dwyer and W. A. Robertson, contra.

Heard before GOSS, C. J., DEAN and EBERLY, JJ., and CHASE and LOVEL S. HASTINGS, District Judges.

HASTINGS, District Judge.

This is an action in equity brought by the appellee, Mary E. Mast, against the appellants, Ada Murray and her husband, Edward Murray, for the cancelation of a certain quitclaim deed executed by the appellee, Mary E. Mast, to the appellant, Ada Murray, and for an accounting for rents. Fraud and want of consideration were alleged as grounds for the cancelation of said deed. Appellants, by their answer, denied fraud, and alleged consideration. The trial court found for the appellee, canceled the deed, found that appellee was entitled to an accounting for the rents of the real estate involved, for the years 1929, 1930, and

1931; found the reasonable rental value of such lands per year to be $2,000, and, after deducting the credits which appellants were found entitled to, that there was due and owing to appellee from the appellants the sum of $4,945.47. From said judgment the appellants, defendants in the court below, have appealed.

The appellee prosecutes a cross-appeal claiming that she should have been allowed rents and profits for the years 1926, 1927, and 1928. The questions presented for consideration on the appeal and cross-appeal are: (1) Was the deed from Mary E. Mast, appellee, to Ada Murray, appellant, obtained by fraud and deceit? (2) Was said deed without consideration? (3) Was the appellee entitled to rents and profits for the years 1926, 1927, and 1928?

It appears from the record that appellee is the mother of the appellant, Ada Murray. The appellee, at the time of the execution of the deed in question, had a life estate in 280 acres of farm land in Cass county, Nebraska. That is the interest it is claimed appellee conveyed by the quit-claim deed in question to the appellant, Ada Murray. Appellee's life estate in said lands was devised to her by the last will and testament of her husband, Abraham Mast, deceased. When his will was offered for probate a contest was threatened by some of his heirs. To avoid a contest, a contract was entered into on March 11, 1916, by the appellee and the heirs at law of the testator, in which they all agreed to permit the will to be probated, and further agreed that appellee should take the life estate as provided in said will and waive her right to elect to take under the statutes of Nebraska; that on the death of appellee there should be paid to the appellant, Ada Murray, and Arnold Mast, her brother, such sum as would be necessary to make the said Ada Murray and Arnold Mast equal to all the other heirs for advancements and payments made to them by Abraham Mast during his lifetime, and that the remainder of the estate, real and personal, should be divided equally among the children of Abraham Mast, deceased, and that the children of his deceased daughters, Nettie

Pierson and Mary C. Dill, should take the share of their mothers. Under this agreement the children of Abraham Mast, then living, took a one-seventh interest in his estate and the children of each of his two deceased daughters took her one-seventh interest. Under this agreement the will was probated, and a decree entered assigning shares as provided therein.

The appellants rented from the appellee, for the year 1921, about 145 acres of the land in which she had a life estate; they moved on said land and gradually increased their leased acreage each year until in 1924, when they occupied the entire farm as tenants, except the house and a small piece of ground surrounding the same, where appellee lived with her son, Arnold Mast. During that time they had the land rented for two-fifths of the grain raised thereon and $5 an acre for the pasture land. They sold the crops raised on the land, paid the taxes, and paid appellee, in small amounts as she needed the same, what they claim was the balance due her for rent. Appellants were thus occupying the land as tenants in the year 1925 at the time the deed in question was made.

The quitclaim deed was made on the 18th day of November, 1925, and the consideration named therein is $500. The evidence upon the question of fraud and the consideration for the making of the deed is conflicting. Only a brief summary of the evidence upon this question will be attempted.

The evidence in behalf of the appellee shows, at the time the deed was signed, she was about 70 years old, had very little education and no business experience; that on the day the deed was signed appellants took her to Plattsmouth in their automobile and she and her daughter went shopping, and on her return to their car she heard her daughter say to her husband, "Is it all right?" and he said, "Yes." And she said, "Well, we will go over there," and then she said to appellee, "We will go over to the office." Appellee says she did not know where she was going, but that they took her over to Judge Beeson's office, and that, after writ-

ing awhile on the typewriter, he inquired what the consideration was, and that she did not know what he meant, and her daughter said "$500." When he finished writing, her daughter said to her, "Ma, sign that now," and she said she would "fix things up and take care of things." The evidence further shows that at the time of the signing of the deed the appellant, Ada Murray, said something about paying rent, and when she said $500 appellee believed that she would "get the rent." It further appears that appellee did not understand that she was signing a deed of her life interest, but believed the same to be a lease; that she did not have her glasses with her at the time that she signed the deed and could not see very well, everything "looked black to her." Her signature, as it appears upon the deed, indicates the truth of her statement, that she could not see very well at the time. It further appears, from appellee's evidence, that prior to the time of the signing of the deed in 1925 several persons solicited her to lease her land, that she imparted this information to her daughter, and that her daughter told her that she wanted her to sign it over to her. The appellee denies that she ever received the $500 named as consideration in said deed or any part of it. In this she is corroborated by the testimony of W. A. Robertson, an attorney whom she employed to get the appellants to reconvey her life estate to her. Mr. Robertson's testimony is to the effect that he demanded of Mrs. Murray that she reconvey her mother's life interest to her, and that Mrs. Murray stated, at that time, that she had never paid anything for it and that she would deed it back if a guardian was appointed for her mother so that Arnold Mast could not get the rent. She is also corroborated to some extent by the testimony of Judge Beeson, who testified that at the time the deed was executed he had no recollection of any money being paid to the appellee.

The evidence on the part of the appellants is that they went to the office of Judge Beeson at the request of appellee and it was at her solicitation that the deed was made; that as a consideration therefor they were to pay her $500;

that she was to be protected on a note that she had signed with her son, Arnold Mast, for $2,000, payable to the Farmers State Bank of Plattsmouth, and appellants agreed to furnish her support during her life. Appellants testified that on the day the deed was made the daughter paid appellee $100 in cash, as a part of the $500 consideration named in the deed, and that about 90 days thereafter, at their home, they paid her the balance of $400 in cash; they requested no receipts for these alleged payments and received none. A reading of their testimony upon the question of these payments is not convincing as to its truth. The appellant, Edward Murray, testified that he paid the $2,000 note of Arnold Mast on which appellee was surety to protect her, and that formed a part of the consideration for the giving of the deed. In regard to that transaction, the evidence shows that on April 23, 1926, the president of the Farmers State Bank of Plattsmouth called at the home of appellee and her son, Arnold Mast, and demanded of them payment of the $2,000 note, which appellee had signed as surety; that after some talk the appellant, Edward Murray, was called in, and it was agreed between him and Arnold Mast that he would purchase Arnold's one-seventh interest in the land and pay his indebtedness to the Farmers State Bank of Plattsmouth, amounting to a little over $3,000, and also the $2,000 owed by Arnold Mast to the Nehawka Bank. That afternoon they went to the Nehawka Bank and Edward Murray gave the president of the Farmers State Bank of Plattsmouth a check payable to that bank for $2,200 drawn on the Murray State Bank, and the president of the Farmers State Bank thereafter gave the Nehawka Bank his check for the amount due that bank. Afterwards Arnold Mast executed a note for $3,000 and a mortgage on his undivided one-seventh interest in the land to the Farmers State Bank of Plattsmouth to take up the indebtedness that they held against him, a part of which was the $2,000 note signed by appellee. After so doing he executed a deed to the appellant, Edward Murray, for his said one-seventh interest in said land, in which the grantee assumed the payment of said $3,000 mortgage.

It appears that at the time the appellant, Edward Murray, purchased the one-seventh interest of Arnold Mast, the $2,000 note on which appellee was surety was secured by a mortgage given by Arnold Mast on his said interest to the Farmers State Bank, and that such mortgage was ample security therefor and so considered by the cashier of said bank. No reason existed for appellee to request appellants to protect her from having to pay said note. The payment of the $2,000 note, on which appellee was surety, by the appellant, Edward Murray, assuming the mortgage for $3,000 on the land as part of the purchase price, did not operate as any consideration for the conveyance of appellee's life estate. The one-seventh interest that he purchased is shown by the evidence to have been of the reasonable value of at least $175 an acre, and the amount that he paid therefor was much less than such value.

The appellee denies in her testimony that there was ever any arrangement whereby she was to give the deed in consideration of her support during life and relieve her from the payment of the $2,000 note on which she was surety; and it is somewhat significant that, if the agreement was such as appellants claim, when it was asked in Judge Beeson's office at the time the deed was made, what the consideration was, the daughter did not state, in addition to $500, it was for the support of her mother during her life and to relieve her on her liability on the $2.000 note.

The evidence on behalf of the appellee further shows that, after the execution of the deed, appellants remained on the premises under practically the same conditions as they had before, that they paid the taxes as they became due upon the land, gave her small sums of money as they had before, furnished her some groceries and some little clothing. After making the deed there was nothing in the relations of these parties which would indicate that any change in relationship was affected or to challenge appellee's attention to the fact that appellants were claiming to occupy the premises otherwise than as her tenants, until in August, 1929.

It appears that during the month of January or February, 1929, appellee suffered an injury, and that she was taken to the home of the appellants, where she remained until the latter part of August of that year. A day or two before appellee left the home of her daughter, her daughter informed her that she wanted to take the "barn away," and appellee told her, "You can't do that, I have no right to let the barns and buildings be destroyed," and that the daughter then said: "It is none of your business. It's mine and I'll do as I please with it." At that time her daughter also told her "that she had bought it for $500." This, appellee claims, is the first intimation that she had that her daughter claimed to own the life estate. Shortly after that, in September, 1929, the appellee consulted an attorney, W. A. Robertson, to ascertain what the claim of her daughter was based on. He investigated and found the quitclaim deed of record, and a few days thereafter made a demand upon the daughter to reconvey the life estate.

The life estate which the appellee conveyed to her daughter, Ada Murray, was a valuable interest in the real estate. At the time of the conveyance she had an expectancy of life of over nine years, the reasonable rental value of her life estate, as shown by the undisputed evidence, was at least $2,000 per annum.

We have held: "The consideration for a conveyance of a valuable interest in real estate must itself have some value, and if it is merely nominal, and there are indications of fraud or concealment of essential facts, equity will cancel such conveyance." *Krause v. Stevens,* 103 Neb. 463.

Where the evidence shows, as in this case, that a deed of a valuable interest in real estate was made by an aged woman of limited education and no business experience, without consideration, and there is evidence she did not know the instrument signed was a deed, but was led to believe and did believe it was a lease of her life estate therein, held sufficient to establish fraud, and equity will cancel such deed.

This being an action in equity involving questions of fact, which the law requires us to hear and determine as a trial *de novo* and to reach an independent conclusion without reference to the findings of the trial court, we have, in determining the weight of the evidence, where there is a conflict therein on a material issue, considered the fact that the trial court observed the witnesses and their manner of testifying. We have carefully examined the evidence and are convinced that the appellee executed the deed in question by being fraudulently induced to believe the instrument was a lease, that at the time of the signing of the same appellee did not know it was a conveyance of her life estate to her daughter, and that the same was without any consideration and in equity and good conscience should be canceled.

This brings us to a consideration of the cross-appeal of appellee.

The question presented by the cross-appeal is: Was the appellee entitled to rents and profits for the years 1926, 1927, and 1928? The trial court found that, by reason of a contract entered into by the appellee and appellants and others on the 7th day of October, 1929, she was not entitled to an accounting for rents and profits for the years mentioned.

It appears that before the contract, upon which the finding of the court was based, was entered into, appellee demanded of appellants a reconveyance of her life estate to her, and also a settlement for the rents and profits due her for the time they occupied the land under the quitclaim deed. Following said demand, a contract was drawn naming as parties thereto the appellee, the appellants and other heirs at law of Abraham Mast, deceased, and their spouses. The contract was signed by all the parties named, except one of the heirs having a small interest therein. As thus signed the contract was delivered.

The part of the contract on which the court denied appellee a recovery for rents and profits for the years 1926, 1927, and 1928 reads as follows:

"It is further agreed between the parties hereto that the said Edward Murray and Ada Murray are to pay to the said Mary E. Mast all rentals for the year commencing March 1st, 1929, and for all subsequent years during her life in case they continue as tenants of said premises. The said Edward Murray and Ada Murray being entitled to credit for any payments made by them in behalf of the said Mary E. Mast for any payments for living expenses, doctor's bill, necessary expenses, or advancements made to her for the year commencing March 1, 1929, and that in case the said Edward Murray and Ada Murray, or either of them, shall continue to farm said premises as tenants of the said Mary E. Mast, for and during her lifetime, and the said Mary E. Mast should depart this life after the said Edward Murray and Ada Murray or either of them have planted crops for said year, that the said Ada Murray and Edward Murray shall have the right to continue for said year as tenants of said place, and shall pay to the parties hereto, their *pro rata* share of the rentals in accordance with their proportion of the fee title to said premises, and that upon the expiration of said year, said lease shall terminate."

The quoted part of the contract is entirely independent of that part of the contract which provides for confirmation of the shares and interests of the parties, as fixed by the contract of March 11, 1926, the reconveyance by appellants to appellee of her life estate, and the conveyance by each of the heirs at law to one another, subject to said life estate.

The purpose of the quoted part of the contract was to settle a dispute between the appellee and appellants as to rents and profits during the time that appellants had been in possession thereof under the quitclaim deed. It is not contended by counsel for appellee but what the effect of said agreement was to relieve appellants of the payment of rents previous to March 1, 1929, but their contention is that such agreement was without consideration as far as appellee was concerned, and that it amounted to no

more than an offer to compromise and settle. The consideration moving to the appellee from the appellants was the renouncing of any claim by them for rents and profits under the quitclaim deed from March 1, 1929, and agreeing to attorn to the appellee for the rent for that year and all subsequent years that they might occupy the premises during her lifetime, and thereby recognizing the right of the appellee to the rents and profits from March 1, 1929, and for all subsequent years during her life by virtue of her life interest therein. In consideration of this, appellee renounced any claim that she might have for rents and profits previous to March 1, 1929. The consideration moving to the appellee was ample for her forgiving any claim that she might have for rents and profits previous to March 1, 1929. It was a settlement of the controversy between them as to rents and profits and not an offer to compromise. The finding of the trial court that appellee was not entitled to rents and profits for the years 1926, 1927, and 1928, by reason of said agreement, is right.

The amount allowed appellee for rents and profits by the trial court is amply supported by the evidence. The trial court took the lowest amount shown to be the reasonable rental value of the lands for each year and deducted all the credits claimed by appellants therefrom and found the balance to be the amount due therefor.

It is suggested by counsel for appellants that the decree of the trial court is wrong in that it provides for the payment of interest on annual rentals from March 1, 1929, before any rent was due. The decree provides: "That the plaintiff have and recover from the defendants the sum of $4,945.47 with interest at the rate of 7 per cent. per annum, on the annual rental when due beginning on March 1, 1929." It is the rule: "Where the rent is payable periodically as yearly, quarterly or the like, and there is no provision for payment in advance, it is not due and payable until the end of the year." 16 R. C. L. 928, sec. 436.

The agreement between the parties does not provide that the rent for the year 1929 should be payable in advance,

therefore the rent for the year 1929 did not become due until the 1st day of March, 1930. Interest should have been allowed only from March 1, 1930, when the rent for the year 1929 became due. The decree is modified so as to provide for interest on the annual rental, when due, beginning on March 1, 1930.

The decree, as modified, is affirmed.

AFFIRMED AS MODIFIED.