KATHLINE BEACOM, ADMINISTRATRIX OF THE ESTATE OF HELEN D. DALEY, DECEASED, APPELLEE, v. JOSEPH J. DALEY, APPELLANT.

81 N. W. 2d 907

Filed March 22, 1957. No. 34076.

*Warner & Warner, C. D. Shokes,* and *S. W. McKinley, Jr.,* for appellant.

*Mark J. Ryan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Dakota County of an action wherein Kathline Beacom, as administratrix of the estate of Helen E. Daley, also appearing in the evidence as Hellen E. Daley, deceased, seeks to recover from Joseph J. Daley the fair and reasonable rental value of certain lands in Dakota County for the years from 1941 to 1952, both inclusive. The trial court awarded plaintiff a judgment for the sum of $9,741.88. Defendant thereupon filed a motion for new trial and, from the overruling thereof, took this appeal.

The lands involved consist of 155 acres in Dakota County described as follows: "The South 13 2/3 chains of the South Half of the Northeast Quarter (S½ NE¼) and the South 13 2/3 chains of the Southeast Quarter of the Northwest Quarter (SE¼ NW¼) and the North-

west Quarter of the Southeast Quarter (NW¼ SE¼) and the Northeast Quarter of the Southwest Quarter (NE¼ SW¼) all in Section 1, Township 28, Range 7, East, in said County and State."

Basically these facts are not in dispute: That on and immediately prior to February 21, 1941, Helen E. Daley, a widow, was the owner of the foregoing lands; that on February 21, 1941, she conveyed these lands to her son, appellant Joseph J. Daley, by warranty deed; that appellant has been in continuous possession of and farmed these lands at all times herein material, up to and until the time of his mother's death on June 22, 1952; that this occupancy was without any lease agreement, either written or oral; and that Helen E. Daley died intestate, leaving appellant and 4 daughters as her sole heirs at law. The daughters are Kathline Beacom, Ann Ebel, Evelyn Rush, and Margaret O'Neill. Appellee is the duly appointed, qualified, and acting administrator of her estate. The father, John T. Daley, died on July 11, 1938. However, prior to his death, he had conveyed the foregoing premises to his wife, Helen E. Daley. Appellee commenced this action on July 30, 1953. We shall herein refer to the decedent, Helen E. Daley, as the mother.

The deed to appellant contained this reservation: "Grantor, however, reserves the right to the use and enjoyment and income from said premises as long as she lives." The mother thereby retained a life estate in the premises and appellant, who was thereafter in possession, was, under the situation herein disclosed, liable to his mother for the fair and reasonable value of the use and occupancy of the premises, payable at the end of each year. Guthmann v. Vallery, 51 Neb. 824, 71 N. W. 734, 66 Am. S. R. 475; Mast v. Murray, 122 Neb. 284, 240 N. W. 302. As stated in Mast v. Murray, *supra:* "It is the rule: 'Where the rent is payable periodically as yearly, quarterly or the like, and there is no provision for payment in advance, it is not due and payable until

the end of the year.' 16 R. C. L. 928, sec. 436." And as stated in the annotation to 126 A. L. R. 565: "Where by the contract the rent is payable either yearly, half yearly, quarterly, monthly, or weekly, and there is no provision for payment at any particular time during such periods, either expressly made or to be gathered by necessary implication from the acts and circumstances of the parties or by custom or usage in the community, the rent is not due and payable until the end of those respective periods."

However, appellant contends there can be no implied contract where there is an express agreement between the parties relative to the same subject matter, citing Acton v. Schoenauer, 121 Neb. 62, 236 N. W. 140, in support thereof. The foregoing is undoubtedly a correct statement of the law but has no application here. While the evidence adduced establishes there was some form of verbal arrangement between the appellant and his mother as to the former's use of these lands, appellant admits this arrangement never reached the status of having definite terms. Under this situation appellant would be required to pay a fair and reasonable annual rental for the premises he occupied during the period of the life estate. See, Stoddard v. Baker, 85 Neb. 729, 124 N. W. 159; Oakes v. Oakes, 16 Ill. 106; 32 Am. Jur., Landlord and Tenant, § 430, p. 349; 52 C. J. S., Landlord and Tenant, § 462, p. 201, § 470, p. 209. As stated in 52 C. J. S., Landlord and Tenant, § 470, p. 209: "* * * ordinarily, in the absence of an agreement to the contrary, the occupancy of premises belonging to another with the consent of the owner implies an agreement by the tenant to pay rent." And as stated in 32 Am. Jur., Landlord and Tenant, § 430, p. 349: "The occupancy of premises by one person with the consent or permission of the owner, or with the consent of the person entitled to assert a right to the possession of the premises, creates between the parties the relation of landlord and tenant, and in the absence of an agreement or circumstances in-

dicating a contrary intent, the law will imply an agreement on the part of the tenant to pay the reasonable value of his use and occupation." And, in this respect, we do not think the relationship of mother and son raises a presumption of gift in view of the fact that the appellant admits there was some arrangement between he and his mother that he was to pay his mother for the use thereof. See, Johnson v. Ghost, 11 Neb. 414, 8 N. W. 391; Fischer v. Wilhelm, 140 Neb. 448, 300 N. W. 350; Oakes v. Oakes, *supra.*

As already stated, appellee brought this action for an accounting of rents. Appellant contends that if appellee has a cause of action against him it is one at law and not in equity. Ordinarily a court of equity has no jurisdiction of an action for rent and claims for unpaid rent are separate and distinct causes of action for each term or payment involved. However, rent may be recovered in equity where the remedy has become difficult or where there is an uncertainty as to the title or the extent of the defendant's responsibility. See, Schuster v. Schuster, 84 Neb. 98, 120 N. W. 948, 29 L. R. A. N. S. 224; Fiala v. Tomek, 164 Neb. 20, 81 N. W. 2d 691; 32 Am. Jur., Landlord and Tenant, § 521, p. 427, § 523, p. 430, § 527, p. 434; 52 C. J. S., Landlord and Tenant, § 552b, p. 365. In Schuster v. Schuster, *supra,* we remanded the cause "with directions to take an accounting of the rents and profits of the land in controversy herein" but limited it to 4 years. In this respect the form of the action does not arrest the statute of limitations. See, Schuster v. Schuster, *supra;* Logan v. Davis, 190 Iowa 278, 180 N. W. 184; 32 Am. Jur., Landlord and Tenant, § 521, p. 427; § 25-206, R. R. S. 1943. As held in Schuster v. Schuster, *supra:* "An action for the recovery of rents and profits from a cotenant is not barred by the statute of limitations until four years have elapsed from the accruing of such action." Of course any voluntary payment made by the debtor upon any cause of action would be sufficient to arrest the run-

ning of the statute of limitations with reference thereto. S. 25-216, R. R. S. 1943; Alexanderson v. Wessmann, 158 Neb. 614, 64 N. W. 2d 306. As stated in Alexanderson v. Wessmann, *supra:* "The voluntary payment of part of a debt arising on contract, a written acknowledgment of it, or a promise in writing to pay it tolls the statute of limitations except as is otherwise provided by section 25-216, R. R. S. 1943." But as stated in In re Estate of Anderson, 148 Neb. 436, 27 N. W. 2d 632: "A voluntary payment upon a claim otherwise barred by the statute of limitations is one that was intentionally and consciously made and accepted as part payment of the particular indebtedness in question under such circumstances as would warrant a clear inference that the debtor assented to and acknowledged the greater debt to be due as an existing liability."

We have come to the conclusion that although an accounting is not the proper form of action in cases to recover rents, however, because of the complexity of the situation as it relates to appellant's liability, it was proper for the trial court to proceed to try this case as one in equity.

Does the evidence adduced establish that the mother and appellant, on July 27, 1949, settled everything owing by appellant for his use of these lands for the years 1941 to 1948, both years included? An affidavit by the mother of that date, subscribed by her before F. B. Hurley, a Notary Public, contains the following language: "Affiant further states that subsequently, on February 21, 1941, she conveyed said premises * * * to her son, Joseph J. Daley, and that ever since said time he has been the owner of said premises; that in said deed she reserved the life use of said premises and that she has always had a satisfactory return from said land ever since said time and that her present arrangement with said Joseph J. Daley as to the income is entirely satisfactory to her." Hurley, a practicing attorney at Ponca, Nebraska, tes-

tified in regard to this affidavit that: "Well, the conversation principally was relative to this instrument which I prepared relating to delivery of the deed mentioned, and at that time she told me that her present arrangement with Joe was entirely satisfactory to her and everything had been settled up to date." We think this evidence, if admissible, together with all the circumstances established by the record, fully supports a finding that appellant and his mother had made a full settlement between themselves covering these years as far as appellant's use of the lands herein involved is concerned. The question then is, was Hurley disqualified to testify in regard thereto because of his relationship to the mother, he being an attorney?

The record shows that at the time this affidavit was drafted, signed by the mother, and subscribed by her before Hurley appellant was present. Whether or not Hurley represented the mother, appellant, or both is not too clear from the evidence, although we are inclined to think he was representing appellant. However, under our holdings, this would be immaterial for Hurley's evidence would be admissible in any event. If the mother was not represented on that occasion by Hurley the following from O'Connor v. Padget, 82 Neb. 95, 116 N. W. 1131, would apply: "A communication made to an attorney at law, where the relationship of attorney and client does not exist, is not privileged, although the attorney was employed in some other capacity." See, also, 70 C. J., Witnesses, § 545, p. 404. If both the mother and appellant were represented on that occasion by Hurley then the following from Jenkins v. Jenkins, 151 Neb. 113, 36 N. W. 2d 637, would apply: " 'When two or more persons employ or consult the same attorney in the same matter, communications made by them in relation thereto are not privileged inter sese. By selecting the same attorney, each party waives his right to place those communications under the shield of professional confidence. Either party

may introduce testimony concerning the same as against the other, or his heirs or representatives. * * *.' 58 Am. Jur., Witnesses, § 496, p. 277." See, also, 70 C. J., Witnesses, § 551, p. 410. If the mother was represented by Hurley and appellant was not then what was held in Short v. Kleppinger, 163 Neb. 729, 81 N. W. 2d 182, would have application. Therein we said: "Communications between attorney and client made in the presence of others do not constitute privileged communications within the meaning of sections 25-1201 and 25-1206, R. R. S. 1943." See, also, 70 C. J., Witnesses, § 545, p. 404.

Since the mother died on June 22, 1952, the question arises, was appellant liable for rent for the year 1952? Death of the mother (life tenant) terminated her interest immediately and thereupon appellant became entitled to the possession of the real estate. Guthmann v. Vallery, *supra.* As stated in Guthmann v. Vallery, *supra:* "On the termination of the life estate the reversioner became at once entitled to the possession of the real estate; * * *."

The rent for 1952 was not due until March 1, 1953. As stated in 33 Am. Jur., Life Estates, Remainders, Etc., § 308, p. 813: "The right to rentals continues only until his death and no longer, if he is a life tenant for the duration of his own life." And in 31 C. J. S., Estates, § 65b, p. 81: "On the termination of a life estate, rights claimed through the life tenant cease and the remainderman is entitled to possession."

As stated in Johnson v. Siedel, 178 Iowa 244, 159 N. W. 677: "The authorities seem to hold that, without a special provision in the lease or by statute, rents are not apportioned in respect to time, so that the person who owns the reversion on the date the rent becomes due, is entitled to the entire rental matured that day. 1 Tiffany on Landlord and Tenant, Sec. 176; 2 McAdam on Landlord and Tenant (4th Ed.), Sec. 291; 24 Cyc. 1185; Russell v. Fabyan (N. H.), 61 Am. Dec. 629." See, also,

33 Am. Jur., Life Estates, Remainders, Etc., § 309, p. 813, § 310, p. 816, § 311, p. 816. As stated in 33 Am. Jur., Life Estates, Remainders, Etc., § 309, p. 813: "The general rule followed in the absence of contrary statute and in the absence of an intention in favor of apportionment appearing from the will or other instrument under consideration is that income consisting of rent money is not apportionable as between persons successively entitled, where the right of one person ends and that of another begins during a rent period."

And in 33 Am. Jur., Life Estates, Remainders, Etc., § 310, p. 816, it is stated: "If the estate of the life tenant terminates intermediate rent days, or before any rent has become due, the accruing rent becomes an incident of and is annexed to the estate of the reversioner. Whoever owns the reversion when the rent falls due is entitled to receive the whole sum, unless it is otherwise provided by contract or statute."

We think, in view of the above principles, that appellant was not liable for rents for the year 1952.

What does the evidence show was a fair and reasonable rental for these lands in 1949, 1950, and 1951? Appellee produced two well-qualified witnesses who testified a fair and reasonable rental was $20 an acre, whereas appellant produced a well-qualified witness who testified it was $10 an acre. The trial court found it to be $18 an acre and we are of the opinion that $18 an acre was the fair and reasonable rental value of these lands for each of these years or $2,790 per annum.

The appellant, during the years 1949, 1950, and 1951, paid the taxes assessed against these lands; paid for insurance on the improvements; and paid for repairs, improvements, and replacements on the property. Since it is the duty of a life tenant to pay the taxes, protect the improvements, and keep them in repair, we think the appellant should be allowed credit therefor but not for improvements or replacements. See, Spiech v. Tierney, 56 Neb. 514, 76 N. W. 1090; 31 C. J. S., Estates,

§ 44, p. 55; 33 Am. Jur., Life Estates, Remainders, Etc., § 448, p. 976, § 464, p. 1002.

As stated in Spiech v. Tierney, *supra*: "As between the life tenant and the owner of the fee, it is the duty of the former to pay all taxes charged against the land during the continuance of his estate."

Also in 33 Am. Jur., Life Estates, Remainders, Etc., § 448, p. 976: "* * * a life tenant is not bound to make 'extraordinary' repairs, such as those which involve substitution of new structures for old."

And as stated in 31 C. J. S., Estates, § 44, p. 55: "A life tenant must make all the ordinary repairs necessary to preserve the property and prevent its going to waste, but he need not make extraordinary repairs. * * * He is bound to keep the premises in as good repair as they were when he took them, not excepting ordinary or natural wear and tear, and this duty devolves on one holding under the life tenant." And in 31 C. J. S., Estates, § 45, p. 56: "A tenant for life is not bound to make any permanent improvements on the estate; * * *."

And as stated in 33 Am. Jur., Life Estates, Remainders, Etc., § 456, p. 984: "The rule appears to be well established that although a life tenant must keep the property in repair, he is under no general legal duty to make permanent improvements thereon, and according to the great weight of authority, if he makes such improvements voluntarily, he has no claim against the estate or a reversionary interest in it for compensation or reimbursement."

These items for 1949 were taxes $554.43, insurance $52.05, and repairs $162.45; for 1950 they were taxes $607.91, insurance $35.56, and repairs $55.77; and in 1951 they were taxes $773.44, insurance $92.70, and repairs $111.64. In this respect we have not allowed appellant the cost of putting in a new furnace in the house in 1951, which replaced an old one, because it is such an extraordinary repair, under the circumstances

of when it was put in, that we do not feel it should be allowed.

There is established the fact that during these 3 years the appellant advanced money to the mother and to others for the mother's care. It is apparent that this was done under and pursuant to some arrangement with the mother in relation to the appellant's use of the land. While a claim for money advanced to or for a deceased person must ordinarily be filed as a claim against the estate we think, under the circumstances here shown, appellant should be given credit for these amounts in this action for, as stated in Herrin v. Johnson Cashway Lumber Co., 153 Neb. 693, 46 N. W. 2d 111, and approved in Russo v. Williams, 160 Neb. 564, 71 N. W. 2d 131: "It is the practice of courts of equity, when they once have obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties."

On July 29, 1949, appellant paid to Margaret O'Neill, with the mother's approval, the sum of $2,500 as consideration for an agreement with Mrs. O'Neill that she would take care of the mother for the rest of the mother's life; during 1949, 1950, and 1951 appellant paid the mother $1,550; on December 14, 1951, appellant paid his mother's hospital bill at St. Vincent's hospital of $155.65; and later part of her doctor bill in the sum of $50. We think appellant should be given credit for all of these sums advanced to or for the mother's use. This leaves a balance owing by appellant for the years 1949, 1950, and 1951 of $1,668.40.

Other questions are raised by appellant but in view of what we have herein held it is not necessary to discuss them. We reverse the judgment of the trial court and remand the cause with directions to enter a judgment for appellee in the sum of $1,668.40 with interest at 6 percent from date rendered and all costs in the district

.court, but against appellee as to all costs of the appeal to this court.

REVERSED AND REMANDED WITH DIRECTIONS.

CHAPPELL, J., participating on briefs.