MARK J. RYAN, EXECUTOR OF THE ESTATE OF MARY A. DELOUGHERY, DECEASED, APPELLANT, v. JAMES A. NELSON, APPELLEE.

128 N. W. 2d 592.

Filed May 22, 1964. No. 35537.

Mark J. Ryan and Richard E. Twohig, for appellant.

McCarthy & Kneifl, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, BOSLAUGH, and BROWER, JJ., and ZEILINGER, District Judge.

ZEILINGER, District Judge.

This is an appeal from the district court for Dakota County of an action wherein Mark J. Ryan, executor of the estate of Mary A. Deloughery, deceased, plaintiff,

seeks to recover from James A. Nelson, defendant, the fair and reasonable rental value of some farm land for the years 1950 to 1962, both inclusive, less the fair and reasonable value of the support furnished to the deceased by defendant during that time.

Plaintiff's petition alleges, in substance, that he is the executor of the estate of Mary A. Deloughery who died testate on July 22, 1961, seized and possessed of the real estate involved; that defendant has been in possession of said real estate and has farmed and operated it during the years in question; that its fair and reasonable rental value was $28,600; and that defendant paid no rent except support for the deceased of the fair and reasonable value not exceeding $14,400 leaving $14,200 owing. Plaintiff prays for an accounting and a judgment for the balance due. Defendant's answer admits that plaintiff is executor of the deceased's estate and that the deceased owned the land involved. He then alleges, in substance, that plaintiff is not entitled to an accounting for more than 4 years prior to the date of the filing of the action because of the statute of limitations; that defendant farmed the land from year to year until the deceased's death under an oral agreement with her whereby he was to furnish her a home, care, and keep for the rent, which he did; and that defendant, if he is accountable for the fair and reasonable rental value of the land, is entitled to a set-off in a large amount for services rendered and cash expended for the deceased's care and keep, and also for repairs and improvements to the real estate plus debts and legacies of the deceased paid by defendant. The trial court found generally for defendant and against plaintiff and generally sustained the defenses of defendant's answer; and found that defendant had paid to the estate $5,300 which constituted an offset for the rents due plaintiff for 1962 and 1963. Plaintiff's motion for a new trial was overruled and he has appealed on the grounds that the decision is not sustained by the evidence, is contrary to the evi-

dence, and is contrary to law; that there is no competent evidence to establish an oral agreement; and that the court erred in finding that the defendant had an offset against plaintiff for the rents for the years 1962 and 1963.

The lands involved consist of approximately 360 acres described as follows: Northwest Quarter (NW¼) Section Three (3) Township Twenty-eight (28), South Half (S½) Northeast Quarter (NE¼) Section Thirty-three (33) Township Twenty-nine (29), North Half (N½) Southeast Quarter (SE¼) Section Thirty-three (33) Township Twenty-nine (29), and Northwest Quarter (NW¼) Northeast Quarter (NE¼) Section Four (4) Township Twenty-eight (28), all in Range Seven (7) East in Dakota County, Nebraska, of which about 205 are tillable and 147 acres are pasture and waste land.

Plaintiff brought suit as in equity for an accounting for rents. Defendant did not object to the form of the action and, in fact, his answer assumes that form of action. The case was submitted to and decided by the trial court as an equity action and it will be so considered in this court. As stated in Beacom v. Daley, 164 Neb. 120, 81 N. W. 2d 907: "Ordinarily a court of equity has no jurisdiction of an action for rent and claims for unpaid rent are separate and distinct causes of action for each term or payment involved. However, rent may be recovered in equity where the remedy has become difficult or where there is an uncertainty as to the title or the extent of the defendant's responsibility."

Basically these facts are not in serious dispute: That at all times in question until her death on July 22, 1961, the deceased, who will also be referred to as Mary, was a single person and the owner of the land in question and lived on it; that by her will she left a life estate in this land to her niece Sophia Nelson with the remainder to the six children of Sophia Nelson of whom defendant is one; that Mary was 98 years of age at the time of her death; that defendant farmed Mary's land

from 1943 to the date of trial; that defendant paid the Elms Nursing Home of Ponca, Nebraska, $2,377.50 for taking care of Mary from March 28, 1960, to July 22, 1961; that defendant did not pay Mary any cash rent or crop share rent after 1949 or any real estate taxes although he collected all the income from the land including government payments; that he did send money to charities as requested by Mary; that defendant never lived in Mary's house on the farm but his mother, Sophia Nelson, did and so did two of his younger brothers until they grew up; that defendant owns some land, rents other land, and lives in Jackson which is near Mary's farm; that Mary had no other source of income; that defendant provided Mary with all of her material necessities and wants, and paid all of her bills and expenses except real estate taxes; that defendant made extensive repairs and improvements to the land and improvements thereon over the years including installing a new bathroom, insulation, storm windows, roofing, guttering, and painting the house, rebuilding the garage and other buildings and feed lots, and fencing and clearing land; that defendant procured insurance on the improvements for Mary and paid the premiums; that defendant's sister, Mary N. Watkins, had advanced $4,800 to Mary to pay taxes which were a lien on the land according to Mary's will which was written in 1950, and defendant paid Mary N. Watkins $3,800 to settle this claim and clear the lien; that defendant deposited in the probate court $1,500 to pay legacies in Mary's will; that there remains about $7,000 in unpaid real estate taxes; that defendant paid a hired man who worked on the farm; that Mary was able to take care of herself fairly well until 1953 when she fell and her condition grew worse; that during the last 6 years she lived on the farm Mary had to be lifted in and out of bed every day, dressed, and held up while she walked in the house for exercise, fed soft foods, and she had to be kept in diapers the last 4 or 5 years she lived on the farm; and that defendant and

his wife personally performed these services for Mary.

It is plaintiff's position that he is entitled to prevail because his evidence established that defendant was in possession of the land involved during the years in question; that defendant paid no rent except for providing for the support of the deceased; and that the fair and reasonable rental value of the land greatly exceeded the value of the support furnished. Plaintiff relies primarily upon Beacom v. Daley, *supra,* and the quotation therein from 32 Am. Jur., Landlord and Tenant, § 430, p. 349, as follows: "The occupancy of premises by one person with the consent or permission of the owner, or with the consent of the person entitled to assert a right to the possession of the premises, creates between the parties the relation of landlord and tenant, and in the absence of an agreement or circumstances indicating a contrary intent, the law will imply an agreement on the part of the tenant to pay the reasonable value of his use and occupation." However, the court pointed out that there could be no implied contract where there is an express contract between the parties relative to the same subject matter, and then concluded: "While the evidence adduced establishes there was some form of verbal arrangement between the appellant and his mother as to the former's use of these lands, appellant admits this arrangement never reached the status of having definite terms. Under this situation appellant would be required to pay a fair and reasonable annual rental for the premises he occupied during the period of the life estate." Acton v. Schoenauer, 121 Neb. 62, 236 N. W. 140, is cited, in which the court said: "It is the universal rule that there can be no implied contract where there is an express agreement between the parties relative to the same subject-matter." Consequently, the first matter for determination is whether or not an express agreement existed between Mary and defendant. Defendant's wife, Helen Nelson, testified to a conversation on December 21, 1948, between Mary and de-

fendant in which Mary said, "Jim, I don't want you to leave. I want you to farm the place and take care of me because I don't have anyone else that will do it for me." Jim said, "Well, what about the rent?" Mary said, "You take care of me and farm the place for me and I will be satisfied." Helen Nelson testified to a conversation on May 10, 1949, between Mary and defendant in which defendant said, "Aunt Mary, what about these taxes?" Mary said, "You just farm the farm and take care of me and never mind the taxes." Plaintiff argues that defendant's wife should not have been permitted to testify to these conversations although he admits that the rule is contrary to his contention where the wife took no part in the conversation and had no direct legal interest in the subject matter, as was the case here. See Foster v. Murphy, 76 Neb. 576, 107 N. W. 843. In addition, plaintiff permitted defendant to testify without objection regarding the terms of the agreement. This occurred on cross-examination after defendant had been called as a witness by plaintiff. In Hansen v. Estate of McDougal, 126 Neb. 538, 253 N. W. 674, the court said: "Where, in an action against the representative of a deceased person, testimony is offered in evidence that is incompetent under section 20-1202, Comp. St. 1929 (now § 25-1202, R. R. S. 1943), but objection to its incompetency is not made, the objection will be treated as waived and will not be considered on appeal." The record is replete with evidence that defendant fully performed all of the terms of the express agreement claimed by him. There is no evidence that he did not so perform or that his performance was not completely satisfactory to Mary from 1950 to the time of her death. All of the evidence is consistent with the agreement claimed except the evidence of witnesses called by plaintiff that the fair and reasonable value of the services furnished Mary by defendant was less than the fair and reasonable rental value of the land. The record establishes an express agreement between Mary and

defendant and that defendant fully performed according to its terms; and plaintiff is not entitled to his assumption of an implied contract and can recover nothing from defendant to the date of Mary's death.

Subsequent to Mary's death defendant paid no rent to plaintiff although plaintiff made demand upon him for it. Defendant testified that his reason for not paying rent to plaintiff was that he considered his mother to be the landlord then. During that time defendant paid $3,800 to settle the claim of Mary A. Watkins who had paid delinquent taxes, and defendant also paid $1,500 into county court to pay legacies in Mary's will. Plaintiff's witness S. H. Nelson fixed the fair rental value of the land at $2,300 per year and plaintiff's witness Walter A. Pederson fixed it at $1,990 per year. Defendant's payments on behalf of the estate exceed plaintiff's claims for the years subsequent to Mary's death and plaintiff can recover nothing therefor. In view of these conclusions it is not necessary to discuss other questions raised in the briefs. The trial court's judgment finding generally for defendant and against plaintiff and dismissing plaintiff's petition at plaintiff's cost is correct and is affirmed.

AFFIRMED.

SPENCER, J., participating on briefs.