RUPERT ·W. BRADY V. STATE OF NEBRASKA.

FILED MARCH 6, 1894.    No. 6646.

Witnesses: ATTORNEY AND CLIENT: CONFIDENTIAL COMMUNI-
    CATIONS. An attorney will not be permitted to disclose confi-
    dential communications made to him by a client while the re-
    lation of attorney and client continues; but communications
    voluntarily made to him after the confidential relation has ter-
    minated may be proved, although they are the same in substance
    as given while the relation existed.

ERROR to the district court for Lancaster county. Tried
below before TIBBETS, J.

*Stearns & Strode*, for plaintiff in error:

A communication is not privileged unless the person to
whom it is made is acting for the time being in the char-
acter of a legal adviser of the person who makes it. The
communication must also be made for the purpose of ob-
taining professional advice or aid in the matter to which the
communication relates. (*Alderman v. People*, 4 Mich., 414;
*Milan v. State*, 24 Ark., 346; *Beeson v. Beeson*, 9 Pa., 279;
*Flack v. Neill*, 26 Tex., 273; *Allen v. Harrison*, 30 Vt.,
219.)

Communications which an attorney is precluded from
disclosing, the client cannot be compelled to disclose. (Whar-
ton, Cr. Ev., sec. 583; *Hemenway v. Smith*, 28 Vt., 701;
*Bigler v. Reyher*, 43 Ind., 112.)

*George H. Hastings, Attorney General*, for the state:

Communications to which privilege once attaches are al-
ways privileged, whether made with reference to the exist-
ing action, or to a previous one if the same question is in
dispute. (*In re Cowdery*, 69 Cal., 32; *Sleeper v. Abbott*, 60
N. H., 162; *Bank of Utica v. Mersereau*, 3 Barb. Ch. [N.

    38

Y.], 592; *Foster v. Hall*, 12 Pick. [Mass.], 89; *People v. Atkinson*, 40 Cal., 284; *Bacon v. Frisbie*, 80 N. Y., 394.)

Whenever the communication made relates to a matter so connected with the employment of attorney as to afford presumption that it was the ground of making the same by the client, then it is privileged. (*Turquand v. Knight*, 2 M. & W. [Eng.], 98.)

Post, J.

This is a petition in error to review a judgment of the district court of Lancaster county whereby the plaintiff in error was convicted of the crime of burglary. He is charged in the information with feloniously breaking and entering a stable, the property of Charles O. Davis, with intent to steal six chickens of the value of $3. The only direct evidence of the guilt of the accused is the testimony of Charles Smith, an alleged accomplice, who had been convicted of the same offense and was at the time serving a term in the penitentiary. Said witness having testified that the accused was present and participated in the burglary, it was sought to impeach him by showing that he had previously made statements fully exonerating the accused from complicity in the crime charged. For that purpose the following affidavit was offered in evidence, its execution having been admitted by said witness:

"STATE OF NEBRASKA, }
    LANCASTER COUNTY. }

"Charles Smith, being duly sworn, on oath says he is one of the defendants in the above entitled case; that his co-defendant, Rupert W. Brady, was occupying a room in the house affiant was stopping at at the time of the alleged burglary and larceny for which affiant and his said co-defendant were tried at the May, 1893, term of the district court, but that at the time affiant and his said co-defendant, Rupert W. Brady, had no business relations at all. Affiant further says that said Rupert W. Brady had no con-

nection with the alleged burglary and larceny of Chas. O.
Davis' hen house on the night of March 31, 1893, wherein
it is charged that the barn and stable of said Chas.
O. Davis was forcibly broken into and entered and six
Plymouth Rock chickens stolen, taken, and carried away;
that said breaking and entering, whatever was done on
that night in the way of entering into the structure that
said Chas. O. Davis' chickens were in, and the taking of
said chickens was done by affiant alone without the assist-
ance or advice or the knowledge, so far as affiant knows,
of said Rupert W. Brady; and affiant says said Rupert
W. Brady had no financial interest in, or benefit from, said
burglary and larceny upon the premises of said Charles
O. Davis on said night of March 31, 1893, and that what-
ever has heretofore been said by affiant in any way impli-
cating said Rupert W. Brady in said burglary and larceny
was done at a time when there was a misunderstanding and
ill-feeling between this affiant and said Rupert W. Brady,
and said charges were made by this affiant to get revenge,
and for mere spite work, upon the part of this affiant,
and was wholly without foundation in fact, and this affiant
is now ready to make amends, as far as affiant now can, for
the wrong done an innocent person.

"CHARLES SMITH.

"Subscribed in my presence and sworn to before me,
this 29th day of June, A. D. 1893.    R. D. STEARNS,
                                "*Notary Public.*"

The above affidavit was excluded on the objection of the
state, as was also a verbal admission to the same effect made
to Mr. Stearns, attorney for the accused. The ground upon
which this evidence was excluded is that the admissions
offered were made at a time when the relation of attorney
and client existed between Mr. Stearns and the witness
Smith, and are therefore privileged communications. The
only evidence which it is claimed sustains that conclusion
is the testimony of Mr. Stearns, from which it appears

that at a former term the plaintiff in error and Smith were tried together for the same offense, which resulted in a verdict of guilty as to both defendants, but which was subsequently set aside on their motion. At that trial Smith was represented by Mr. Oppenheimer and the plaintiff in error by Mr. Strode, who was assisted by Mr. Stearns. Smith soon afterward withdrew his plea of not guilty and entered a plea of guilty. After judgment on his plea of guilty he sent for Mr. Stearns, to whom he volunteered the statement that the plaintiff in error had nothing to do with the burglary, and offered to make an affidavit to that effect. The affidavit set out above was then prepared by Mr. Stearns and signed and sworn to by said witness after it had been read over in his presence and fully explained to him. We may assume that the relation of Mr. Stearns to the defense of Smith was such as to impress the information received from the latter during the trial with the character of a privileged communication. There is, however, no evidence that the relation of client and attorney existed between them at the time the affidavit was made. On the other hand, it appears that the prosecution had terminated in the conviction of the party whose statements were offered in evidence. By section 328 of the Code an attorney is declared incompetent to testify concerning any communication made to him by a client; and by section 333 it is provided that no practicing attorney, in giving testimony, shall disclose any confidential communication properly intrusted to him in his professional capacity. These provisions, it seems, are but declaratory, and add nothing to the general rule. It is not necessary to the application of the rule that any judicial proceeding should have been commenced or even contemplated. It is sufficient if the matter in hand may become the subject of judicial inquiry. (1 Greenleaf, Evidence, 240.) But all authorities recognize one essential to a privileged communication, viz., the attorney, solicitor, or counsel must have been acting for the

time being in the capacity of a legal adviser. (1 Greenleaf, Evidence, 239, 244; Taylor, Evidence, 930; *Romberg v. Hughes*, 18 Neb., 579.)    The fact that the same or similar statements may have been made to the attorney while the confidential relation existed is immaterial, provided such statements are voluntarily repeated after the termination of such relation.    It is said in *Yordon v. Hess*, 13 Johns. [N. Y.], 492, that "while an attorney cannot disclose what has been communicated to him in that capacity, if the client chose after that relation has ceased to volunteer any communication, he is not protected, although they may be in substance the same as given while the relation existed." It follows that in excluding the evidence offered the district court erred.    This conclusion renders an examination of other questions presented unnecessary.    The judgment of the district court is

Reversed.