IN RE ESTATE OF FRED L. MILLER, DECEASED.
WILMER CASTLE, APPELLANT, v. EVERETT O. RICHARDS,
EXECUTOR OF THE ESTATE OF FRED L. MILLER, DECEASED,
APPELLEE.

99 N. W. 2d 473

Filed November 27, 1959.   No. 34627.

*Smith & Wertz, Maupin, Dent, Kay & Satterfield, Thomas O. David,* and *James J. Duggan,* for appellant.

*Baskins & Baskins,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

A claim filed by appellant in the proceedings for the administration of the estate of Fred L. Miller, deceased, in the county court of Deuel County for labor performed and material furnished by appellant, as he alleged, at the request and for the benefit of Fred L.

Miller, hereafter called the deceased, in the conduct of farming operations on a half-section of land in the named county during the period commencing with the year 1948 and continuing through the year 1954, is the subject of this litigation.

The substance of the objections of appellee to the claim was a denial of the statements of the claim as made by appellant; a plea of the statute of limitations as a bar to all items thereof alleged to have accrued during the years 1948 to and including the year 1951; the payment by deceased to appellant for all seed wheat described in the statements of the claim; a plea that deceased performed labor for appellant; that deceased loaned large sums of money without interest to appellant, in consideration whereof it was agreed by the parties that no amount would accrue or become due to or against either of them for labor done by either of them for the other except for the expense of combining and hauling wheat; and that deceased paid appellant for all combining and hauling of wheat done by him for the deceased. A hearing of the claim and the objections thereto was had in the county court and the claim was disallowed. An appeal therefrom was taken to the district court by appellant. The issues joined by the pleadings of the parties in that court were substantially identical with those presented to the county court though they were pleaded with somewhat enlarged elaboration in the district court. The result of the trial in that court was a verdict for appellee. A motion for new trial was denied and a judgment of dismissal of the claim was rendered. This appeal is from that action of the district court.

Appellant claims prejudicial error in the action of the district court which permitted appellee to testify concerning a statement made to him by appellant, probably on September 22, 1952. Appellee was then an attorney and a member of the bar of Nebraska. He had resided, maintained an office, and practiced law in Chap-

pell since November 1939. On October 5, 1951, he prepared a note in the sum of $12,500 payable to the order of the deceased on October 5, 1956, without interest, and a real estate mortgage securing the payment of the note on real estate in Deuel County, at the instance and request of the deceased and appellant. These instruments were executed and the mortgage acknowledged by appellant and his wife in the presence of appellee. They were that date delivered to the deceased and the mortgage was then filed for record. The instruments and the abstract of title to the land were left with appellee by deceased and they were kept in the safe in the office of appellee.

Appellant made payments on the note by check payable to the deceased but delivered to appellee at his office. Each payment was endorsed on the note by appellee and each was delivered to the deceased. The first endorsement thereon was $4,500 bearing date September 22, 1952. Deceased placed his initials, F. L. M., opposite each endorsement. The instruments representing a prior loan of $22,000, without interest, by deceased to appellant were prepared and handled and payments were made thereon in the same manner as was done in reference to the $12,500 loan.

Appellee handled all legal matters that appellant submitted to him for a period of years until 1953 or 1954. In other words, appellee was the attorney for appellant when he required legal services. Appellee had also represented the deceased in the same manner. The record does not show that appellee was employed as attorney in any matter for appellant in September 1952. It is shown that he had never talked with appellee about any of the matters involved in this litigation.

Appellee testified that at the time a payment was made on the note at his office by appellant, probably on September 22, 1952, he made the statement in the presence of appellee that: " 'This goes on the principal because there is no interest being charged or paid, because I

am doing the work out there'—or words to that effect." Appellee agreed with leading questions on cross-examination that the substance of the statement made by appellant at the time above mentioned was that the payment he made should be credited on the principal: "Because I don't need to pay any interest because I am doing the work for Fred in lieu of the interest." The statement by appellant was not a part of any conversation of the parties, it was not solicited or discussed by appellee, it was volunteered by appellant, and it was not made by him in seeking legal advice or to appellee in his professional capacity to assist him in the performance of any professional duty he had undertaken for or that he owed to appellant. At that time appellee was not acting as attorney for appellant; in fact, he was not acting for appellant in any capacity. He was then acting for the deceased in receiving a payment on the note owing to him. The statement was an instruction or direction as to how the payment being made by the debtor was to be endorsed as a credit on the note. The evidence concerning the statement made by appellant on September 22, 1952, was very prejudicial and may have been disastrous to the claim of appellant. On the other hand it was vital to the defense that the work done for the deceased by appellant was offset or satisfied by the foregoing of interest on the loans made him by the deceased. If the evidence of appellee in this respect concerned a privileged communication, its admission was prejudicial error.

A provision of section 25-1201, R. R. S. 1943, is: "The following persons shall be incompetent to testify: * * * (3) an attorney concerning any communication made to him by his client in that relation or his advice thereon, without the client's consent in open court or in writing produced in court * * *."

The relevant part of section 25-1206, R. R. S. 1943, is: "No practicing attorney * * * shall be allowed in giving testimony to disclose any confidential communication,

properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline."

It is not every communication of a client to his attorney that is accorded the privilege of confidentiality but only those properly entrusted by a client to his attorney in his professional capacity and necessary and proper to enable the attorney to discharge his office according to the usual course of practice. Stated differently and more precisely, a communication to be privileged from disclosure must relate to a professional matter and must have been made because of the relationship then existing of attorney and client.

Brady v. State, 39 Neb. 529, 58 N. W. 161, declares: "But all authorities recognize one essential to a privileged communication, viz., the attorney, solicitor, or counsel must have been acting for the time being in the capacity of a legal adviser."

Ehlers v. State, 133 Neb. 241, 274 N. W. 570, states: "A communication from client to attorney is not privileged when it is not made to the attorney in his professional capacity. * * * Where attorney is acting as agent for his client, a communication in connection with such agency is not privileged."

Beacom v. Daley, 164 Neb. 120, 81 N. W. 2d 907, says: "A communication made to an attorney at law, where the relationship of attorney and client does not exist, is not privileged, although the attorney was employed as such in some other capacity."

In Stoddard v. Kendall, 140 Iowa 688, 119 N. W. 138, the Iowa court said: "It is first argued that the court erred in admitting the testimony of Mr. Willett. The objection, we think, is untenable. The mere fact that the person offered as a witness is an attorney at law does not render it improper for him to relate statements or communications made to him by another, nor is the fact that the person whose statements are sought

to be proven was a client of said lawyer at the time the communication was made sufficient in itself to exclude the testimony of the latter concerning it. That which the statute forbids is a disclosure of 'confidential communications' properly intrusted to him in his professional capacity and necessary and proper to enable him to discharge the functions of his office, according to the usual practice and discipline. Code, section 4608. The preparation of wills, though appropriately and commonly done by lawyers, is by no means exclusively confined to members of the profession. * * * If a lawyer be employed in such service, the testator may ask at his hands legal advice and intrust him with confidential information to which without doubt the protection of the statute would apply, but the mere fact that the lawyer was engaged in preparing a will at or about the time a given statement was made * * * does not necessarily give it a confidential character. * * * In short, a communication made at such a time may or may not be privileged, according to its nature; and, if upon its face it bears no indication of being a communication of a confidential nature, and there be no other fact or circumstance tending to so characterize it, the testimony of the attorney thereto ought not to be excluded. The burden of showing the confidential relation is upon the party objecting."

In Knox v. Knox, 222 Minn. 477, 25 N. W. 2d 225, it is said: "Communications between an attorney and his client which are protected as privileged under Minn. St. 1945, § 595.02 (2), are limited to those made in the course of the professional employment and with respect to the subject matter thereof."

Stormon v. Weiss, — N. D. —, 65 N. W. 2d 475, contains the following: "The ground of the objection was paragraph 1 of Section 31-0106, N. D. R. C 1943, which provides: 'An attorney, without the consent of his client, cannot be examined as to any communication made by the client to him, nor as to his advice given

thereon in the course of professional employment * * *.' The basis of any valid objection under this provision must be the relationship of attorney and client. The burden of showing that such relationship existed is on the objector. * * * 'The privileged character of the communication must appear; the mere fact that the person offered as a witness is an attorney at law does not render it improper for him to relate statements or communications made to him by another; nor is the fact that the person whose statements are sought to be proven was the client of a particular lawyer at the time the communication was made, sufficient in itself to exclude the testimony of the latter concerning it.' Thornton on Attorneys at Law, Sec. 96."

State v. Addington, 158 Kan. 276, 147 P. 2d 367, says: "Not every communication to a lawyer by a client is incompetent. It must be of a confidential nature and made to the party in his capacity as a lawyer."

Cafritz v. Koslow, 167 F. 2d 749, states: "The principle of attorney-client privilege is an exception to general liability of every person to give testimony upon all facts inquired of in a court of justice. * * * Mere relation of attorney and client does not, ipso facto, establish principle of attorney-client privilege, and if circumstances do not imply confidentiality to a communication between client and attorney the privilege does not attach * * *."

In Richards v. Richards, 64 Misc. 285, 119 N. Y. S. 81, the New York court said: "Section 835 of the Code of Civil Procedure does not protect against disclosure every communication which the client may choose to make to his attorney under a pledge of secrecy. It protects only such communications as the client may make, not pending the attorney's professional employment, but 'in the course of it.' To come within the protective provisions alluded to, therefore, the communication must be one essentially confidential and relate to the subject-matter upon which the attorney's advice was given or

may be sought." See, also, Modern Woodmen of America v. Watkins, 132 F. 2d 352; In re Hall's Estate, 120 N. Y. S. 2d 886; Bridges v. State, 131 Tex. Cr. 482, 100 S. W. 2d 372; Pollock v. United States, 202 F. 2d 281; Kent Jewelry Corp. v. Kiefer, 202 Misc. 778, 113 N. Y. S. 2d 12; Anderson v. Thomas, 108 Utah 252, 159 P. 2d 142; 97 C. J. S., Witnesses, § 277, p. 790, § 283 (b), p. 799; 58 Am. Jur., Witnesses, § 484, p. 270. The communication here in question was neither professional nor confidential and there was no error in the trial court admitting the testimony of appellee challenged by appellant as being privileged.

Maureen Castle, wife of appellant, testified as follows: She and appellant were married in 1938 and about 3 years thereafter they occupied a farm southwest but in the vicinity of the farm of the deceased. They became acquainted with the deceased and moved onto a farm owned by him in the fall of 1946 under a 3-year lease. Thereafter through the year 1954 they saw the deceased practically every day. They became very close friends and deceased frequently was in the home of appellant and had meals there. Appellant did farm work on the land leased by him from the deceased commencing in 1945. Appellant was advised in the spring of 1947 that deceased desired to sell the land leased to appellant and it was offered to him. He soon thereafter bought a section of the land and about 2 years later bought the other half-section of it. He operated this land and did custom farming for deceased from the year 1948 on a half-section of land, known as the Johnson land, which was leased to the deceased, to and through the year 1954. The deceased died in 1955. Until 1954, when wheat allotments became in force, half of the land was planted to wheat each year and half of it was summer tilled. Thereafter the acreage was somewhat reduced because of the wheat allotment plan.

In 1954 during April or May appellant conducted a one-way operation on the part of the land that was to

be summer tilled. He did a like operation but not so deep about a month later. He conducted two Graham-Hoeme operations with sweeps, a rod weeder operation, and finally drilled the area to wheat. Appellant also did all the summer tilling of the land in 1953, 1952, and 1951. The deceased did no work on the land during any of the years of 1951 to and including 1954 except a small amount of plowing during the last year. The witness assisted her husband in the farm work and knew the work he was doing each day.

The deceased left on a trip to Hawaii in 1954. The day he started on his trip he told the witness that appellant should do whatever he thought should be done or whatever was necessary to keep the land in good condition. The gas used for fuel and the grease for the machinery while the operations were conducted on the land of deceased by appellant were furnished by deceased. Appellant furnished the seed wheat each year but it was paid for by the deceased except for the year 1954 when he did not pay for the seed wheat used that year. There were about 100 bushels of it. The deceased did not pay appellant for any part of the work that was done by him on the Johnson land during the years 1951 to 1954, inclusive. The deceased told the witness the day before he left on his last trip, while he was getting ready to make the trip to Hawaii, that when he returned he would settle up with appellant.

The district court at the close of the cross-examination, on motion of appellee, struck from the record all the testimony of Maureen Castle, the wife of appellant. The reason stated for the motion was that "because of her interest in this lawsuit; because she individually is liable she is incompetent to testify as a witness." The action of the trial court in this regard is assigned by appellant as prejudicial error because, as he asserts, the witness was not shown to have had a direct legal interest in the result of the litigation. Appellee argues that witness signed the note and mortgage of October

5, 1951, given to the deceased, and a part of the indebtedness represented thereby was unpaid; that she was liable for its payment; that if appellant secured an allowance of his claim the amount of it could be used as a set-off in any action against appellant and the witness for the unpaid balance due on the note and mortgage; and that the witness by her testimony established she was asserting the right of set-off. These considerations, appellee asserts, exhibited a direct legal interest of the witness in the result of the litigation.

The statute relied upon recites that no person having a direct interest in the result of any proceeding, when the adverse party is the representative of the deceased person, shall be permitted to testify as to any transaction or conversation had between the deceased and the witness. § 25-1202, R. R. S. 1943. A part of the testimony of the witness concerned conversations and transactions with the deceased and a part of it did not. The motion was to strike all her testimony and the action of the court was that all of it was stricken from the record of the trial. That ruling had no condition, limitation, or exception. It was all-inclusive. It was not changed or modified. Her testimony was material to the case of appellant.

The argument of appellee that the witness by her testimony was asserting the right of set-off is not supported by the record. She testified on cross-examination, referring to the unpaid balance of the note secured by mortgage to the deceased, that "* * * we did try to pay it * * *." She was then asked: "You went and offered to pay it after Mr. Miller's death, did you?" She answered: "We tried to straighten this business up many times; if that is what you are saying." This misses by considerable distance establishing or even permitting an inference that the witness was "asserting the right of set off." The claim of appellee that if appellant secured an allowance of his claim, the amount of it could be set off in an action on the note and mortgage against

the makers for any balance unpaid thereon disregards the fact that the witness has no legal control of the claim of appellant or what use or disposition he would make of the proceeds of it if it were allowed. She could not even legally plead a set-off, much less compel it in such a situation. It is more important, however, that the wife of appellant was not obligated because she signed the note and mortgage except that the indebtedness could be enforced against her separate estate, if any, which she possessed at the date she signed the instruments, and that the record yields no proof that she possessed any separate estate or that she carried on a separate trade or business on her sole and separate account at the time the instruments were signed by her. The record does not show, therefore, that the witness had any obligation on the instruments or any legal interest in any matter of set-off.

It was decided as early as the case of Kocher v. Cornell, 59 Neb. 315, 80 N. W. 911, that: "The contract of a married woman can only be enforced against the separate estate which she possessed at the date of the contract."

The decision in that case was approved in Giltner State Bank v. Talich, 115 Neb. 236, 212 N. W. 536, by this language: "It will serve no useful purpose to review the common-law liability of a married woman upon her contracts, and the enlargement of her powers and liabilities as affected by statutes. The discussion of these questions can readily be found in the reported decisions of this court. In Kocher v. Cornell, 59 Neb. 315, the question now before us is discussed and the general rule announced that 'The contract of a married woman can only be enforced against the separate estate which she possessed at the date of the contract.'" It is also said in Giltner State Bank v. Talich, *supra*: "Where a money judgment in general form is rendered against a woman, upon a contract executed during coverture, wherein she binds her separate estate, but which is not

made with reference to her own separate trade, business, or profession, such judgment can be enforced only against the property or the proceeds thereof she possessed at the time of executing the contract." See, also, Myers v. Rosenberg Bros., 143 Neb. 930, 12 N. W. 2d 77.

The record does not show that the wife of appellant had a direct legal interest in the result of this litigation. Her testimony was competent evidence. The striking of it out of the record was prejudicial error.

Lowell Castle, a brother of appellant, testified: He was and had been a wheat farmer of 22 years' experience. His farm was in the vicinity of the home of appellant. The half-section of land leased by deceased and farmed by appellant was across the road from appellant's land. There were always transactions and relations between the witness and appellant in their farming operations, some of which were joint. They exchanged work and the witness often helped appellant in his farming operations on his land and the land of others. The witness knew that appellant did all of the work on the half-section of land leased by deceased from the year 1948 until the end of 1954. The witness helped and assisted appellant in about every farming operation that he did including those on the land of deceased in the year 1954 and that was done on the basis of the trading or exchanging of work by him and the witness. The summer tilling of the land of the deceased that year consisted of two one-way operations, the first with a smaller machine and the other with a larger machine, three operations with a Graham-Hoeme, rod weeding, and finally drilling the area to wheat. The witness assisted appellant at various times in the farming operations on the land of the deceased for the years involved in the claim of appellant. The witness had no conversation with deceased concerning payment for the work the witness did and made no demand or request for payment therefor to the deceased. The witness in his testimony disclaimed having any claim of any kind

or character against the deceased or his estate on any account. The deceased asked the witness to do some rod weeding on the land in August 1954. That is the only time he was asked by the deceased to do anything. He did not pay the witness for the rod weeding but the witness was paid therefor by appellant when the brothers adjusted their accounts.

The witness was asked about a conversation he had with the deceased in the fall of 1953 about the work done on his place by appellant and the compensation therefor, and a second conversation the witness had in the fall of 1954 with the deceased concerning the same matters. He was not permitted to answer concerning either conversation because of the statute above referred to excluding testimony of a person who has a direct legal interest in the controversy under the circumstances stated in the statute. It is a permissible inference from the record that the work done on the land by the witness was at the instance, for the benefit, and was the responsibility of appellant; that he alone was liable to the witness for his compensation for the work done; and that this was the attitude of all the interested parties. The burden was on appellee to establish that the witness had a direct legal interest in the result of the proceeding. This burden was not satisfied. The testimony of the witness which was excluded because of the statute was competent and material. Its exclusion was error.

The judgment should be and it is reversed and the cause is remanded to the district court for Deuel County for further proceedings according to law.

REVERSED AND REMANDED.